MORGAN COUNTY, IN THE STATE OF MISSOURI, v. JOHN D. McRAE *et al.*

SURETIES — *Release — Contractor's Bond — Change of Plans.* Sureties on a bond, conditioned for the erection in accordance with certain plans and specifications and keeping in repair of bridge abutments, are released from liability by a substantial change in the plans of the work made by the principal, and accepted by the obligee of the bond without their knowledge or consent.

*Error from Linn District Court.*

THIS action was brought on behalf of Morgan county, Missouri, against the defendants on the following bond:

"Know all men by these presents, that we, D. Heidelburg, as principal, and John D. McRae, P. H. Ayres, and W. H. Ayres, as securities, acknowledge ourselves to owe and stand indebted to Morgan county, in the state of Missouri, in the

penal sum of $2,000, well and truly to be paid, and to the payment whereof we bind ourselves, our heirs, executors and administrators firmly by these presents. Signed with our hands, and sealed with our seals. The condition of this bond is such, that whereas, the said D. Heidelburg has this day entered into a contract with Morgan county for the construction of abutments, masonry work and approaches for a bridge across Flat creek, in said county, at or near where the public road leading from Florence, in said county, to Sedalia, in Pettis county, crosses said creek: Now, if said contractor shall commence said work on or before the 15th day of July, 1886, and complete the same on or before the 15th day of September, 1886, in accordance with the plans and specifications made by George P. Clark, road commissioner for said county, which said plans and specifications are on file in the office of the county clerk of said county, to which reference is here had and made, and keep said work so done by him in repair for four years from and after the completion thereof, then this bond to be void; otherwise, to remain in full force and effect, both in law and equity.

"In witness whereof, we have hereunto affixed our hands and seals, this 18th day of June, 1886.

D. HEIDELBURG.  [SEAL.]
JOHN D. McRAE.  [SEAL.]
P. H. AYRES.  [SEAL.]
W. H. AYRES."

The answer of the defendant alleged that the plans and specifications for the masonry and earthwork contracted for were materially changed by the plaintiff after the execution of the bond, so that the work contracted for was greatly increased in dimensions and rendered more difficult to construct and maintain. The plaintiff replied, denying the allegations of the answer, and alleging that, if any changes were made, they were made without the knowledge or consent of the plaintiff, and were for the benefit of the defendants. On the trial, the plaintiff offered in evidence, as the plans and specifications referred to in the bond, a report made by George P. Clark, county surveyor and *ex officio* commissioner of roads and bridges, to the county court of Morgan county, the material part of which reads as follows:

"The undersigned, county surveyor and *ex officio* commis-

sioner of roads and bridges for Morgan county aforesaid, has the honor to report that, in obedience to an order of said court to him directed, bearing date of the 5th day of May, 1886, and directing him to view and make estimate of the cost of erecting an iron bridge at the place named in the petition, namely, across Flat creek, near the Versailles, Florence and Sedalia road, in the northeast quarter of section 28, town 45, range 19, would respectfully report that he has viewed the proposed site, made a survey of the creek, and submits the following estimate for the consideration of your honorable court:

"One abutment on west side of bank of creek, dimension, base, 7 x 20 feet; top, 3 x 16 feet; height, 26 feet; containing 90 cubic yards.

| | |
|---|---:|
| Approximate estimate of cost of piers, $6.50 @ 90 | $585 00 |
| Abutment on east bank, base, 5 x 18 feet; top of abutment, 3 x 16; contents, 40 cubic yards | 279 50 |
| One span iron, 12 x 150 feet, $20 | 3,000 00 |
| And finds the total approximate cost, except timbers, floor and approaches | $3,864 50 |

Thereafter the contract for masonry was let by the bridge commissioner to D. Heidelburg at $4.79 per cubic yard. Without any further plans or specifications, Heidelburg proceeded to construct the abutments and approaches under his contract. No one seems to have supervised the work for the county, but he was permitted to go ahead in his own way, and to construct abutments, with wing walls, the exact dimensions of which do not appear in the evidence. After their completion, Henry Knecht, deputy bridge commissioner, inspected the work and measured the masonry and approaches, and reported 283¾ cubic yards of masonry in the abutments and wing walls. This report was received and accepted by the county court, and Heidelburg was paid in accordance with this measurement. Soon after the west abutment was built, it commenced to crack near the middle of the inner face, and during a time of high water in May, 1889, it fell, carrying down with it the superstructure, which was badly injured, the whole of the main west abutment and the south wing wall both falling.

A demurrer was interposed to plaintiff's evidence, which was sustained by the court, and the plaintiff brings the case here.

*John A. Blevins,* for plaintiff in error.
*James D. Snoddy,* for defendants in error.

The opinion of the court was delivered by

ALLEN, J.: The question to be considered is, whether the plaintiff's proof showed a substantial change in Heidelburg's contract to construct the abutments and approaches to the bridge after the execution of the bond sued on. It is somewhat difficult to treat the report of the county surveyor, indefinite as it is, as plans and specifications, yet, inasmuch as this is evidently what the parties had in contemplation when the contract was let and the bond executed, it must be so regarded. The specification as to the west abutment, which is the one that fell, is that it shall be 7 by 20 feet at the base; 3 by 16 feet at the top; 26 feet high, and containing 90 cubic yards. This is definite as to dimensions and form, and calls for a four-sided structure, sloping in presumably on all sides. The structure actually erected and accepted by the plaintiff had wing walls at the ends, the stone of which were interlocked with those of the main part of the abutment. The bond executed by the defendants requires them to keep the work in repair. Can we say that to repair such a work is the same thing as to repair an abutment of the form and dimensions specified in the county surveyor's report? Clearly, not; for in rebuilding, the wing wall, when made to interlock, would necessarily affect, to a greater or less extent, the work on the main part. By acceptance of and payment for the work as done by Heidelburg, the county court ratified his action. The contention made in this court, that Heidelburg alone changed the plans, without the knowledge and consent of the plaintiff, and that the changes were for his own benefit, are without force, in view of the full ratification which the acceptance of the work and payment, not only of the amount contracted for, but for the wing walls as well, must be held to be. The rule of law is elementary, that the contract of a surety is to be strictly construed. It is well settled that the sureties on a bond to secure the performance of a building

contract are discharged by any substantial change or altera-
tion of the plan of the work, unless the right to make such
change or alteration is expressly given in the bond itself, or
the contract which it secures. (Brandt, Sur., § 399; *United
States v. Corwine*, 1 Bond, 339.)

It appears that the amount of masonry required by what
is treated as the plans and specifications was 130 cubic yards,
while the county accepted and paid for 288¾ cubic yards.
It is urged that the estimates were only approximate, but the
dimensions given are specific, and must be held to be con-
trolling, for there is nothing whatever in the report to indi-
cate any right by either party to change size or base, top or
height.    It is said that the construction of wing walls was nec-
essary to sustain the earthwork in the approaches; and it is also
urged, and there is evidence tending to show, that wing walls
would strengthen and secure the abutments; but this is hardly
a question as to what is best for the parties interested.    The
sureties bound themselves only for the faithful construction
and keeping in repair of the abutments described in the speci-
fications.    If it appeared in this case that the wing walls were
separate and distinct structures, and that the piers, as built
and accepted, were substantially in accordance with the orig-
inal plan, we might say that the wings were something for
which the defendants were in nowise responsible, but which the
plaintiff had a right to employ Heidelburg to erect under a sep-
arate contract; but the evidence in this case shows that there
was no other contract between the parties; that the wing walls
were directly connected with the abutments, and no separate
measurement was made, or is shown by the evidence, from
which we can determine anything about the form or dimen-
sions of the west abutment as in fact erected.

We think the plaintiff's evidence shows a substantial de-
parture from the contract by Heidelburg, which was ratified
and approved by the county court of Morgan county, and
that the defendants in this case were thereby released from
their obligations under the bond.    The judgment is affirmed.

All the Justices concurring.