JOHN RISSE *et al.* v. THE HOPKINS PLANING MILL COMPANY *et al.*

1. MECHANICS' LIENS— *Contractor's Bond for Payment of Claims.* A bond given by a contractor under the statute relating to mechanics' liens, and in accordance with § 13 of chapter 168, Laws of 1889, conditioned for the payment of all claims which might be the basis of liens or which might arise or grow out of the contract and the performance and completion of the work thereunder, is a substitute for the statutory liens to which laborers and materialmen are entitled where no bond is given; and where such bond is given no lien can thereafter attach, and any which may have attached or have been filed is discharged.

2. SURETIES, *When not Relieved from Liability.* A slight departure from the plans and specifications of the work, without the knowledge of the sureties upon the bond, where alterations are authorized by the contract the performance of which the bond

was given to secure, will not relieve the sureties from liability upon the bond.

3. PRINCIPAL'S PROMISE, *Broken — Surety Held.* The fact that the principal procured the signature of a surety upon the promise that the principal would afterward obtain the signature of another surety, which was not done, will not relieve the surety from obligation on a bond delivered, approved and filed as the law requires.

*Error from Wyandotte District Court.*

ACTION by *The Hopkins Planing Mill Company* and another against *John Risse* and others upon a bond given by a contractor. Trial before Hon. N. H. LOOMIS, judge *pro tem.,* without a jury. There was a decree adjudging certain claims to be liens on the property of said Risse, and he brings the case here. All the material facts appear in the opinion herein, filed July 6, 1895.

*E. J. Wall,* for plaintiff in error.

*Scroggs & McFadden,* for defendant in error, F. G. Husson.

*McGrew, Watson & Watson,* for defendant in error, Thomas Lloyd.

The opinion of the court was delivered by

JOHNSTON, J.: On October 5, 1889, P. T. Bolinger entered into a written contract with John Risse to construct a building upon certain lots belonging to Risse in Kansas City, Kas., and to furnish all the material and labor therefor. The work was to be done according to certain plans and specifications prepared by an architect, which were made a part of the contract, and it was provided that the architect was to determine all questions of doubt as to the meaning of the drawings or specifications, and that his decision should be final and conclusive. There was a further provi-

sion that if any alteration of the work was required, a fair and reasonable valuation of the work added or omitted should be made by the architect, and the sum agreed to be paid for the work should be accordingly increased or diminished; and in case they were unable to agree as to the valuation, arbitrators were to be chosen, and their decision with reference to the valuation of the work added or omitted was to become final and binding. It was agreed that the sum to be paid for the material and labor should be $3,275, subject to additions or deductions on account of alterations. On the same day, and in pursuance of the mechanics' lien law of 1889, Bolinger, as contractor, executed a bond to the state of Kansas, with A. J. Hibbs and F. G. Husson, as sureties, which bond was on October 11, 1889, duly approved by the clerk of the district court of Wyandotte county. The bond recited that it was given in pursuance of the mechanics' lien law, and to secure compliance with the provisions of the contract between Bolinger and Risse; and provided that if Bolinger

" shall pay all claims which might be the basis of liens upon said described real estate and improvements for materials furnished, labor, or otherwise arising, or which may arise or grow out of said contract and the performance of and completion of said work thereunder or connected therewith, under the provisions of said act, then this obligation is to be null and void; otherwise, to be and remain in full force and effect."

Material was furnished and labor performed, in pursuance of the contract, for which payment was not made by Bolinger, and several of the parties who had furnished material and labor endeavored to obtain mechanics' liens upon the premises; and among others, Hibbs and Husson, who were sureties upon

the bond, sought to obtain a lien upon the premises, as subcontractors, for material furnished by them. The Hopkins Planing Mill Company, which had an unpaid claim for material furnished, brought an action upon the bond, making the contractor and the sureties thereon parties defendant; and it also asked that it be adjudged to have a lien upon the premises in the event that the court should hold that it could not recover upon the bond. Other persons who had claims for material and labor were also made defendants, who set up other claims under the bond and upon the premises for labor and material furnished by them. On the trial, testimony was offered to the effect that during the construction of the building some alterations were made and some work done not provided for in the plans and specifications, and that the added work and material were of the value of about $300. The court found that by reason of these changes and alterations, without the knowledge and consent of the sureties upon the bond, such sureties were discharged from any liability thereon. The unpaid claims of the several claimants amounted to $2,-103.46, and they were adjudged to be liens upon the property and improvements of Risse, and a foreclosure of the same was decreed. The statute under which the bond was given is as follows:

"The contractor or owner mentioned in section 1 of this act may execute a bond to the state of Kansas for the use of all persons in whose favor liens might accrue by virtue of this act, conditioned for the payment of all claims which might be the basis of liens; which bond shall be in a sum not less than the contract-price, and with good and sufficient sureties, whose qualifications shall be verified in accordance with § 723 of the code of civil procedure, such surety

as shall be approved by the clerk of the district court of the county in which the property is situated, and may file such bond in the office of said clerk; and when such bond is so approved and filed, no lien shall attach under this act, and if when such bond is filed liens have already been filed, such lien shall be discharged. Suits may be brought on said bond by any person interested.'' (Gen. Stat. of 1889, ¶ 4745.)

While this bond runs to the state, it is given for the protection of those who contribute labor or material

1. Mechanics' liens— contractor's bond for payment of claims.

to the building or improvement contracted to be built or made, as well as for the benefit of the owner of such building or improvement. When ·the bond is given as the statute prescribes, no lien can attach, and any lien which may have been filed is discharged. It takes the place of the statutory liens to which laborers and material-men are entitled when no bond is given. When it is given the material-men and laborers may rely upon the same and thus avoid the trouble and expense of perfecting liens, and the owner is relieved from any care as to whether the money advanced by him upon the contract is applied upon the claims for material and labor furnished under the contract. A bond given for such purpose should not be lightly set aside by any act or omission of the contractor, who is the principal obligor upon the bond, or by the owner, who is not a party to the same.

The sureties claim to be released from liability by reason of the alterations and additions .that were made in the plans and specifications, and the increase of the of the contract-price without their knowledge and consent. This contention cannot be sustained, for the reason that the contract itself contemplated that changes and additions might be made which would

increase or diminish the amount to be paid for the complete work. It has been held that "the sureties on a bond to secure the performance of a building contract are discharged by any substantial change or alteration of the plan of the work, unless the right to make such change or alteration is expressly given in the bond itself or the contract which it secures." (*Morgan Co. v. McRae*, 53 Kas. 358.) As the contract specifically provided that changes might be made with the concurrence of the architect, the sureties cannot claim a release because the alterations were made without their knowledge or consent. The provisions of the contract did not require that the consent of the sureties upon the bond should be obtained, and as the owner had reserved the right to make changes, and which was expressly provided for in the contract, the sureties who signed the bond for the performance of the contract are not in a position to complain of the changes made. The departures from the original plan and specifications were not very important, nor were the alterations expensive. The location of a window was changed; two of the rooms that were to have been separated by a partition wall were connected by an opening or archway; one of the rooms was ceiled with lumber instead of being plastered; an inexpensive ventilator was put in the roof; and some other minor changes not particularly mentioned in the specifications were made; and these alterations were made with the concurrence of the architect, the owner, and the contractor. It is not easy to have plans and specifications so prepared that some changes will not be found necessary as the work progresses, and it appears that no more changes were made in this instance than are likely to be required in the construction of a building of the character described in the plans. We think

**2. Sureties, when not relieved from liability.** the changes were made substantially as the contract contemplated, and that there was no such departure as will release the sureties from liability upon the bond. (*Mc-Lennan v. Wellington*, 48 Kas. 756; *Building Ass'n. v. Fitzmaurice*, 7 Mo. App. 283; *Bohn v. McCarthy*, 29 Minn. 23; *Steffes v. Lemke*, 40 id. 27; *Abbott v. Morrissette*, 46 id. 10; *Robinson v. Hagenkamp*, 52 id. 101; *Swift v. Martin*, 20 Ill. App. 515; *Martin v. Swift*, 120 Ill. 488; *Moore v. Fountain*, 8 S. Rep. 509; *Dorsey v. McGee*, 46 N. W. Rep. 1018.)

It is contended that, because the principal upon the bond represented to one of the sureties that if he would sign the bond he would obtain the signature of another party, and upon such representation he signed the same, relying upon the promise that the name of the other surety would be obtained, and that, **3. Principal's promise, broken—surety held.** as this was not done, the surety was relieved from liability thereon. The judgment of the court below was not based upon this contention, nor can it be sustained. (*Carter v. Moulton*, 51 Kas. 9.)

An objection was made to a review of the case, on the ground that Bolinger, the principal contractor, was not a party to the proceeding in this court. We are unable to see, however, that he is a necessary party to the proceeding, or that the sureties will necessarily be affected by his absence. He was not held to be discharged from liability upon the bond, and a judgment for the full amount of the claims was rendered against him.

The judgment of the district court will be reversed, and the cause remanded for a new trial.

All the Justices concurring.