NORTHERN LIGHT LODGE, No. 1, I. O. O. F., *et al., vs.* JAMES KENNEDY, *et al.*

Opinion filed December 2d, 1897.

### Building Contract—Construction.

> A building contract between a corporation and a firm provided that the corporation "shall be at liberty to make such changes or alterations during the construction of the building as they shall consider necessary, and the contract shall not be violated by such acts;" and also provided that "no alterations shall be made in the work shown or described in the drawings and specifications except upon a written order of the architects." *Held*, construing the two provisions together, and in the light of the customs of the business, that the contract meant that the corporation had the right to order changes and alterations,

but that such orders must be in writing, and the architects were merely designated as the agents of the corporation in giving such orders.

## Liability of Surety.

While, under our statute (section 4651, Rev. Codes) and settled rules of law, a surety cannot be held beyond the express terms of his contract, yet, in ascertaining those terms, the same rules of construction must be applied as in other contracts.

## Alterations of Contract.

It is further *held* that the provision in said contract, declaring that no alterations should be made except upon written order, was inserted for the mutual benefit of the owner and contractor, and the owner alone could not waive or abrogate it. The contractor might legally have refused to make any changes or alterations not ordered in writing.

## Alteration Discharged Sureties.

Where a bond had been given by the contractor for the faithful performance of the above contract, and where, without the knowledge of the sureties, the owner ordered, by parol, certain changes that materially increased the cost of such building, and such changes were executed by the contractor, *held*, that the parties thereby changed their contract, and to hold the sureties liable under this substituted arrangement would be to hold them beyond the express terms of their contract.

## When Sureties Not Released.

The fact that the owner paid the contractor in full, without retaining money to pay off claims of mechanics and material men, when by the contract it was authorized so to do, would not release the sureties on the bond.

## Mechanic's Lien—Recovery on Before Judgment.

In order to recover the amount of a mechanic's lien which had been filed against the building, it was not necessary that such lien should have been reduced to judgment, provided the amount of the account was duly proven.

Appeal from District Court, Cass County; *McConnell*, J.

Suit by the Northern Light Lodge, No. 1, I. O. O. F., and Frank Marsh and others, trustees, against M. W. Shanley and T. Mournin, co-partners, and James Kennedy and others as sureties, to recover upon a bond. From the judgment for plaintiffs, defendants appeal.

Reversed.

*J. W. Tilly*, for appellants.

The contract provided that no alterations should be made in

the work except on a written order of the architects. This provision was a condition precedent to the making of any changes and is material to holding the sureties on the bond. Bishop on Contracts, 1422; *Drake* v. *Hill*, 53 Ia. 37. The liability of a surety is not extended by implication. He has the right to stand upon the very terms of his contract. *Judah* v. *Zimmerman*, 22 Ind. 388; *Evens* v. *Gronden*, 28 S. W. Rep. 439; *Killoren* v. *Mechan*, 55 Mo. App. 427; *Erickson* v. *Brandt*, 55 N. W. Rep. 62; *Beers* v. *Stremple*, 22 S. W. Rep. 620; § 4651, Rev. Codes; Brandt on Suretyship, 601; *Sumonson* v. *Grant*, 36 Minn. 439; *Ide* v. *Churchill*, 14 Ohio St. 372. It is not sufficient that he may sustain no injury by a change in the contract or that it may be for his benefit. *Simonson* v. *Thom*, 31 N. W. Rep. 861; *Miller* v. *Stewart*, 9 Wheat, 703; *Tomlinson* v. *Simpson*, 33 Minn. 446; *Bill* v. *Paul*, 52 N. W. Rep. 1110. On application to take a case from the jury the evidence of the opposite party must be assumed to be true, and inferences are against the moving party. *Marshall* v. *Homey*, 47 N. W. Rep. 29; *Christie* v. *Barnes*, 6 Pac. Rep. 599; *Purcell* v. *English*, 86 Ind. 34; *Myers* v. *Dixon*, 45 How. Pr. 48.

*Ball, Watson & Maclay*, for respondents.

It was specially provided that the owners might make changes as they considered necessary, and that the contract should not be vitiated thereby. Such provisions will be given effect. *Risse* v. *Hopkins*, 40 Pac. Rep. 904; *Hayden* v. *Cook*, 52 N. W. Rep. 165; *Consaul* v. *Sheldon*, 52 N. W. Rep. 1104; *Beers* v. *Strimple*, 22 S. W. Rep. 620. The provision that alterations in the work should be ordered in writing by the architect, being one for the benefit of the owner might be waived by the owner without releasing the sureties. *Smith* v. *Molleson*, 42 N. E. Rep. 669; *Consaul* v. *Sheldon*, 52 N. W. Rep. 1104; *DeMattos* v. *Jordon*, 46 Pac. Rep. 403.

BARTHOLOMEW, J. The plaintiff the Northern Light Lodge, No. 1, I. O. O. F., is a corporation. The defendants Shanley & Mournin were co-partners as building contractors. In June, 1894,

the plaintiff entered into written contract with said Shanley & Mournin for the erection of a certain building in the City of Fargo. To secure the faithful performance of the contract upon their part, Shanley & Mournin gave the usual bond in such cases, with the defendants Kennedy, O'Neil, and Elliott as sureties. Plaintiff brought suit upon the bond. The sureties alone defended, their main defense being such a change in the building contract, without their consent, as released them as sureties. There was a directed verdict against them, and they appeal.

The first difficulty in the case arises upon the construction of the written contract. By a provision in the contract the specifications were made a part thereof. In the specifications it is provided that: "The I. O. O. F. shall be at liberty to make such changes or alterations during the construction of the building as they shall consider necessary, and the contract shall not be violated by such acts, but a proper allowance shall be made in the price of contract at the time of such changes, either to the I. O. O. F. or the contractors, as the case may be." In the body of the contract it is declared: "No alterations shall be made in the work shown or described in the drawings and specifications except upon the written order of the architects, and the amount so ascertained shall be added to or deducted from the contract price." It is conceded the evidence shows that alterations were made which increased the cost of the building over $1,000, and that such alterations were not made upon the orders of the architects, either written or oral, but that they were made upon the oral orders of plaintiff. Do these conceded facts change the contract in a manner that releases the sureties on the bond given for its faithful performance? Our statutes declare (§ 4651, Rev. Codes,) that "a surety cannot be held beyond the express terms of his contract," and that is the elementary law of the text-books. The difficulty in this case lies in determining the terms of the contract. It is clear that the contract expressly declares that the plaintiff may make such alterations or changes as it may

deem necessary, and that the contract shall not be vitiated by such acts. If it went no further, the case would be plain, as such provisions are proper, and will be enforced as against a surety on a bond to secure the performance of the contract. *Hayden* v. *Cook*, (Neb.) 52 N. W. Rep. 165; *Risse* v. *Mill Co.*, (Kan. Sup.) 40 Pac. Rep. 904; *Beers* v. *Strimple*, (Mo. Sup.) 22 S. W. Rep. 620. The complication arises when we consider the foregoing provision in connection with the provision which declares that no alterations shall be made in the work "except upon a written order of the architects." If we construe this provision to mean that the right to order changes or alterations in the work is placed exclusively with the architects, then, necessarily, we destroy the provision which gave the owner that right, and declared that the exercise of the right by the owner should not vitiate the contract. On that construction both provisions cannot stand. One or the other must be nullified. But, on familiar rules of construction, it is our duty to so construe the contract as to give some effect to all its provisions, if its language will reasonably bear such construction. And while it is true that a surety cannot be held beyond the express terms of his contract, yet in ascertaining those terms the same rules of construction must be applied that would be applied as between the principals to the contract. Brandt, Sur. § 80, declares: "The rules for construing the contract of a surety or guarantor should by no means be confounded with the rule that sureties and guarantors are favorites of the law, and have a right to stand upon the strict terms of their obligations. * * * In the construction of the contract of a surety or guarantor, as well as of every other contract, the true question is, what was the intent of the parties, as disclosed by the instrument, read in the light of the surrounding circumstances? * * The meaning of the words is not affected by the fact that the party sought to be charged is principal surety or guarantor." And see, also, *Crist* v. *Burlingame*, 62 Barb. 351; *Belloni* v. *Freeborn*, 63 N. Y. 383; *Standley* v. *Miles*, 36 Miss. 434; *Birdsall* v. *Heacock*, 32 Ohio St. 177. It has often been said that one of the

greatest aids in reaching the true meaning and intent of an uncertain contract is to consider the condition and surroundings of the parties, and the objects they are seeking to attain. We have here a corporation, acting through certain trustees, as appears by the contract, entering into an agreement with a building contractor. Was it the purpose of the parties to secure any rights to the architects? Clearly not, because the architects were not parties to the contract. It was not the intention by that contract to give them the right to preserve the particular symmetry or strength in the building that they might prefer. It will not be contended for a moment that, had the owner and contractors agreed upon any particular alteration, the architects could have interposed to prevent the execution of such agreement. They occupied no contractual relations that gave them any such power. Clearly, it was not the purpose to confer rights upon the architects. The contract must have some other construction. We think it reasonably certain that a correct construction will be reached when we remember that one party to that contract was a corporation; that the building, when erected, would be the property of such corporation, hence it was immediately interested in every detail thereof; that corporations ordinarily act through agents; that, if any act was to be performed, it would be natural and customary to mention the agent by whom such act should be performed; that these parties were contracting in the light of the customs and usages pertaining to the building trade; that in the construction of buildings of the character of this one the architect, who is supposed to be an expert in such matters, generally acts as the agent of the owner, who is presumed to be a non-expert. The building contractor, being himself an expert, can be depended upon to look after his own interests. These facts were well known to the contracting parties, and they doubtless contracted with reference thereto. If this be correct, then the contract was, in legal effect, simply this: The plaintiff had the right to make such changes or alterations as it might desire, and such acts should not vitiate the contract; but no such changes

or alterations should be made except upon plaintiff's written
order, through its agents, the architects. But the fact still
remains that plaintiff never gave the written order. Can the
sureties take advantage of that fact to defeat a recovery against
them? They insist that they can, and, construing the agreement
to mean that plaintiff had the right to make such alterations as
it saw proper, but that no alterations should be made except
upon the written order of plaintiff, it next concerns us to discover
the purpose that was to be served in thus requiring a written
order. Plaintiff insists that the provision was entirely for its
benefit, and, being for its exclusive benefit, and the contractor
having no interest whatever therein, that plaintiff had a perfect
right, under the law, to waive such requirement; that defendants
are charged with knowledge of this right, and must be held to
have contracted with reference thereto. But we are not satisfied
with the assumption that the provision was exclusively for
plaintiff's benefit. The plaintiff cites three cases as supporting
this view. The first is *Smith* v. *Molleson*, (N. Y. App.) 42 N. E.
Rep. 669. In that case—which was an action against a surety
upon a builder's contract—the contract provided that payments
were to be made upon certificates furnished by plaintiff's superin-
tendent. Payments were made without such certificates, but in
no greater amount than would have been made had the certificates
been exacted. The court held that the surety was not thereby
released upon the express ground that the surety was not preju-
diced. The court say: "We are not dealing now with any actual
change in the terms of the contract, but with acts or omissions of
the plaintiff in the performance, which, in order to release the
surety, must be of such a character that it can be said that his
position was changed to his prejudice." It is true that the court
said that this provision was intended for the benefit of the owner
alone, and he could waive it without affecting the defendant's
rights. But this was *dicta* merely, as the court expressly refrained
from deciding the case on that ground. *Consaul* v. *Sheldon*,
(Neb.) 52 N. W. Rep. 1104, was also an action against a surety

on a builder's contract. The provision in that case was in this language: "No new work of any description done on the premises, or any work of any kind whatsoever, shall be considered extra, unless a separate estimate in writing for the same, before its commencement, shall have been submitted by the contractor to the superintendent and the proprietor, and their signatures obtained thereto." Quoting this, the court say: "Complaint is made because the above provision was disregarded. Obviously, said stipulation was inserted in the contract solely for the protection of the defendant in error, and a compliance therewith he might waive. It was made the duty of the contractor to make and submit estimates of all new work to the superintendent and the owner, and the sureties cannot be heard to urge the failure of their principal to comply with the terms of the contract on his part to be performed as a reason why they should be released from liability on the bonds." Here, again, the statement that the provision was for the sole benefit of the owner becomes mere *dicta*. The case was decided, and rightly so, upon the ground that it was the principal in the bond who was in default. The third case is *De Mattos* v. *Jordan*, (Wash.) 46 Pac. Rep. 402. That case is more nearly analogous to this. There the provision required the contractor, upon receiving written authority from the architect, approved by the owner, to perform any work that might be required in the alteration, modification, or addition. The court said: "Moreover, this provision was for the benefit of appellant, and to protect him against unauthorized bills for extra work, and it affected the contractor only in so far that he could collect nothing for additional work not authorized as provided by the agreement." This case recognizes that the contractor had some interest in the provision. We think this is correct, notwithstanding the *dicta* in the other cases cited. It is common knowledge that at least a moiety of all cases arising upon building contracts arise upon this one question of extra work and materials, and the parties often find themselves litigating the single question of fact whether or not such extras were ordered.

The clause requiring a written order was, in our judgment, inserted for the express purpose of cutting off all possibility of such a controversy. The owner could not be required to pay for any extras for which the contractor could not produce the proper order, and, on the other hand, the contractor was entitled to receive pay for all extras for which he could present the proper order. We think these parties were mutually interested in that provision, the contractor as well as the owner. Suppose, after the execution of the contract, the owner had gone to the contractor, and orally ordered a change from the specifications involving an increased expenditure of $500, and the contractor had positively refused to make such changes unless the same was ordered in writing, would he have thereby violated any contractual obligations to the owner? In other words, could he have been compelled to make changes that were not ordered in writing? It seems very clear to us that these practical questions must be answered in the negative. And, if the contractor could insist upon the written order, it was because he had rights thereunder; and, if he had rights thereunder, the owner alone could not waive the provision requiring such written order; and, if the owner and contractor united in waiving such provision, then they changed their contract, and the sureties are not liable on the substituted contract. Every increase in their liability is to their prejudice. Under the contract for the performance of which they became sureties, their liability could be increased, but only in a specified manner. To hold them to a liability that has been increased in any other manner is to hold them "beyond the express terms of their contract." This cannot be done.

When the plaintiff tries this case upon the theory of the law as we have announced it, different evidence may be produced, and we shall therefore remand the case. And, as the case goes back, it is proper to say that, upon the theory that the sureties are not discharged, there was no error in permitting a recovery for the amount of a mechanic's lien that had been filed, where the account was proved, although it had not been put into judgment.

*Belloni* v. *Freeborn*, 63 N. Y. 383; *Kohler* v. *Matlage*, 72 N. Y. 259. Nor were the sureties released by the fact that plaintiff failed to retain money to pay liens that might be filed, although authorized by the contract to do so. One of the purposes of the bond was to relieve plaintiff from looking after such claims. But, for reasons already stated, the judgment of the trial court is reversed, and a new trial ordered.

Reversed. All concur.