BARTLETT & KLING, Appellees, v. THE ILLINOIS SURETY COMPANY, Appellant.

**Suretyship:** APPEAL: QUESTIONS NOT RAISED BELOW. A surety can
1  not for the first time on appeal raise the question, in a suit on its bond for a default of the principal, that it was not notified of the default prior to commencement of suit.

**Building contract:** LIMITATION OF ACTION: RELEASE OF SURETY. The
2  provision in a contract limiting the time in which suit may be brought thereon relates wholly to the remedy, and may be controlled by the contract itself. Thus where a construction contract required that any suit by the owner against the contractor should be brought within a certain time after the last work was performed, but also provided that such provision should not be construed for the benefit of the surety, the surety on the contractor's bond could not rely on a failure to sue the contractor as a release from liability on the bond.

**Same:** CHANGE IN THE WORK: RELEASE OF SURETY. The provision
3  in a building contract that changes in the work may be made and, if agreed upon, shall not relieve the sureties on a bond given to guarantee performance of the contract, is valid. In a suit against the sureties on a bond given to secure the performance of a building contract containing the above provision, the evidence disclosed a change in the use of certain material and certain changes in the construction, and it is held that the court properly submitted to the jury the question of whether there was a change in the work or a change in contract.

**Same:** CONSENT OF SURETY TO CHANGES IN WORK. While the sure-
4  ties on a bond to secure the performance of a building contract are discharged by a substantial change or alteration in the work, unless such right is expressly given in the bond or contract which it secures, still the surety may by his contract consent in advance to any change which may be made in the character of the work or manner of doing it; and where the surety has so consented to a provision in the contract that changes in the

work may be made by written order, and that the same shall not operate as a release of his liability, the contractor may waive the written order for changes without releasing the surety; especially where such changes do not materially alter the contract price, even though there can be no recovery of extra compensation for such changes without the production of a written order therefor.

Building contract: COMPLETION BY OWNER: STATEMENT OF COSTS: CONSTRUCTION. The building contract involved in this action provided that if the owner furnished or paid for any labor or material to be furnished by the contractor, the accounts and statements rendered by the owner should be conclusive of the cost thereof, except where shown to be incorrect; it also provided that the owner might terminate the contract, complete the work and charge the cost to the contractor. *Held*, that the provision relating to accounts and statements should not be limited to those things the owner was to furnish under the contract, but included those items for labor and material which the contractor was to furnish and which were required to complete the building after termination of the contract.

Same: ACTION AGAINST SURETIES: EVIDENCE: INSTRUCTION: Where the sureties on the contractor's bond became responsible for the performance of the builder's contract, in which it was provided that the owner might terminate the same, complete the building and charge the cost to the contractor, and that statements of the cost of labor and material in so doing presented to the contractor should be conclusive on the subject unless shown to be incorrect, the introduction of such statements in a suit against the surety on its bond to recover the amount so expended made a *prima facie* case, and an instruction to that effect was proper.

Same. Although objection was made to the introduction of such statements no ruling was had thereon and no error therefore could be predicated on their admission; but as the statements were received and retained by the contractor without objection, and as they are copies of books introduced without objection, they were admissible in the action against the sureties.

Reopening case: NEW TRIAL: DISCRETION. The granting of a motion to reopen a case for further testimony, or for a new trial on the ground of newly discovered evidence, is largely discretionary with the trial court; and where there was a lack of diligence in procuring the evidence, and it was impeaching rather than substantive in character, refusal to reopen the case or grant a new trial was not an abuse of discretion.

*Appeal from Mahaska District Court.—*Hon. B. W. Preston, Judge.

WEDNESDAY, FEBRUARY 17, 1909.

REHEARING DENIED WEDNESDAY, MAY 12, 1909.

ACTION at law upon a bond given by defendant to secure the performance of a contract made by one Glattfeld with plaintiff for the construction of certain brick and stone work about and upon what was known as the "Central Heating Station" for the State Agricultural College at Ames. Plaintiff claimed something like $3,000 as owing it because of the defaults and delinquencies of Glattfeld, and in a supplemental petition asked for work done after the bringing of the suit. Defendant set up a counterclaim for extra work done by Glattfeld, and averred that the original contract, plans and specifications had been orally changed without its consent and contrary to the terms of the original contract, thereby releasing it from liability. It also pleaded a release, due to the fact that plaintiff had not sued the principal, Glattfeld, within six months from the completion of the work, as it had agreed to do. The case was tried to a jury, resulting in a verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*John F. & W. R. Lacey,* for appellant.

*Crosby & Fordyce* and *John O. Malcolm,* for appellees.

DEEMER, J.—Plaintiffs are general contractors, and as such they undertook the erection and construction of what was to be known as the "Central Heating Station" for the State Agricultural College at Ames. They sublet the "brickwork, masonry and bricklaying" to one Glattfeld,

the contract with him having been executed June 26, 1906. On July 20, 1906, the bond in suit was signed by Glattfeld as principal and the defendant as surety. It is for the penal sum of $3,000, and is conditioned as follows:

The condition of this obligation is such that, whereas the said principal has entered into two certain written contracts with said Bartlett & Kling, for the doing by said principal of taking down and reconstructing and completion of the brickwork and the setting of the partitions of construction of Macon County Infirmary, Macon, Missouri, under date of June 6, 1906, and brickwork, masonry and bricklaying, including setting of stone trimmings for construction of Central Heating Station Building, city of Ames, Iowa, under date of June 25, 1906, now, if the said principal shall well and truly keep, do, fulfill, and perform each and all of the covenants, obligations, undertakings, conditions, and guaranties of said contracts by said principal to be kept, fulfilled or performed and at cost to said Bartlett & Kling as in said contract provided for, then this obligation to be void, otherwise to remain in full force and virtue.

The contract with reference to the work at Ames is very long and need not be set out in full. We shall refer to the material parts by setting out the substance thereof or by excerpts taken from the record. Glattfeld was named as the first party, and Bartlett & Kling the second, and it was promised, among other things, that:

Article 1. First party agrees to furnish all labor and material, and do and perform all the work required, for the full doing and completion of the brickwork, masonry, and brick laying, including setting of stone trimmings, for construction of Central Heating Station building in city of Ames, Iowa, all in full and strict accordance with the present plans and specifications, and their requirements, including all work and material of character and kind above mentioned, that is required by said plans and specifications, some provision therein to the contrary not-

withstanding, together with all work and material specified under headings in specifications applicable to work herein contracted for, and all that is ordinarily done or furnished by contractors or workmen, in carrying on such work, together with and subject to all changes, alterations, additions, deductions and details, as herein provided for, and maintain same in place until fulfillment of this contract. All of which first party agrees to do and perform in good, true, perfect, prompt and workmanlike manner, and to satisfaction and acceptance of second party, the architect and owners of said building, and all at the cost to second party as herein provided. Where the word 'work' occurs in this contract it shall be held to mean and refer to labor, work and material the same as though each time repeated. The plans and specifications above referred to are same as are furnished by the architects, Proudfoot and Bird, and are on file with the college authorities.

Article 2. Second party shall have the right to furnish further details with written explanations, to illustrate and show the work to be done and furnished, and first party agrees to conform to the same as part of this contract, the same as though fully set out in original plans and specifications, but this provision shall not require second party to plan or lay out any of first party's work. Second party shall have the right to make any and all changes in the work called for by this contract, plans and specifications, and in the amount of, or character of, work to be furnished, that they may be directed or allowed to make, by said architect, or owners, without in any way making void or otherwise affecting the provisions or covenants of this contract. The order from second party for such changes, together with the price, as herein provided for, shall become a part of this contract, and be complied with by both parties the same as though fully set out in original plans, specifications and contract, and such changes, the order for same, nor agreed value of the changes, if agreed on, shall in no manner, relieve or release the sureties on any bond given to guarantee this contract, but becoming a part of this contract are covered by said bond. The value of and agreed cost to second party for the work furnished, in accordance with this provision, shall be in proportion to this contract price for the work, herein con-

tracted for, unless the parties agree in writing as to the value of such changes, which they are authorized to do, in which case all interested parties shall be bound thereby. But first party agrees to make no alterations in the work contracted for, or shown or described by the drawings and specifications, except upon the written order of second party, and the production, by first party, of such written order, calling for work not already covered by this contract, shall be a condition precedent to first party's right of recovery for any work or material claimed as extras. This provision for changes shall not be used so as to decrease by more than one-half the total amount of the work now contemplated by this contract. Should first party for any reason not covered by these provisions furnish work, labor or material of a poor or less expensive grade or kind, or of less amount or value, than is herein contracted for, and if same is accepted and allowed to remain, there shall be deducted from the cost to second party, and from the amount otherwise to be paid to first party, such an amount as the work so supplied is worth to furnish, or should have cost, less than the work herein contracted for. It is agreed that no verbal order, objection, claim, or notice by either party to the other shall be of effect or binding, and no evidence of such order, objection, claim or notice shall ever be introduced in any suit in law or equity wherein these parties are interested, both parties agreeing to execute and deliver in writing all communications from them by which the other party is to be charged, notified, or affected, and when same are given verbally they shall be held as not material or binding, and none of the provisions of this contract, plans or specifications, shall be held to be waived, or interpreted, by second party, by reason of any act whatsoever, or in any manner, other than by an express waiver, or definitely agreed interpretation thereof in writing, signed and sealed by second party, and it is agreed that no evidence shall be introduced against second party of any other waiver or interpretation. All work done or furnished by first party, and chargeable to second party, on said building, shall be held to have been done under this contract.

It was also provided that it should be no excuse to

first party, for failure to proceed as agreed, that some part of his work was delayed by second party, unless the same actually prevented him from doing and furnishing the particular work required. It was also provided that if the first party should fail to prosecute or carry on his work with promptness, or as the contract called for, the second party should be at liberty, if it so elected upon written notice, to make necessary arrangements and place necessary orders and provide such labor and work as the contract called for, or that if first party failed to give bond, or in any other respect failed to meet the requirements of the contract, the second party was at liberty to take possession for the purpose of completing all or any part of the work, and in either case the first party agreed to pay second party, as shown by itemized bills rendered, the cost to them of furnishing the work and carrying out the contract. It was also provided that:

Should the second party discontinue the erection of said building, on account of the owners or their agents failing to comply with their contract with second party or for any other cause not the fault of second party, then first party shall, upon written order, discontinue work for such a time as he may be required to by such cause, and proceed again at such time as shall be ordered by second party, but should such suspension be continued and the building not be completed by second party, first party shall be entitled to pay for so much of said work as he performed or furnished, at such a price as said work is worth in proportion to the total work to be done under this contract, at this contract price, and no further compensation or damages. Should first party be delayed on account of the progress of other portions of the building, or on account of material to be furnished by second party, or any other delay caused by second party, the same shall not be grounds to first party for claim of damages or extra compensation.

It was further agreed that the first party should be subject to all the requirements, provisions, orders, rulings,

and decisions of the owners or their agents which were
binding on second party under their contract with the own-
ers, save that the first party was not to be released from
any of the plans, specifications, or contract.   Second party
was to furnish f. o. b. cars at the building switch without
cost to first party the cut stone trimmings required by
plans and specifications, but no other material of any
kind, save such as they should sell first party as stated in
the contract.   The total amount to be paid first party for
the work was $10,000.

Except only, should there be changes, alterations, ad-
ditions, deductions, or omissions, as herein provided for,
then there shall be added to, or deducted from this sum
mentioned, so much according to the methods provided for
valuing the same, as the work done and furnished is worth
more or less than the work herein contracted for, and this
sum so found shall stand in the place of the sum above
mentioned, which sum shall be due and payable only
upon the fulfillment by first party of all the covenants,
agreements and conditions by him to be performed and
kept.   Second party shall, however, be at liberty to make
monthly or other payments as the work progresses, and
pay faster, earlier or in different manner than herein pro-
vided, without such acts being a waiver of any rights or
remedies, and without in any way relieving or releasing
the sureties on any bond given by first party for the exe-
cution of this contract; and should first party for any
reason be overpaid, or the work done or furnished cost
second party more than the agreed price, he agrees to make
payment back to second party.   When final payment is
made to first party, or the amount due him is offered as
a final payment, he agrees to give to second party a receipt
in full of all demands, and both parties agree that such
receipt shall be conclusive evidence of full settlement be-
tween them.

Article 7.   At time of final settlement, which shall be
only when all obligations and agreements, except as pro-
vided in this article, are by first party fully carried out,
first party agrees to present in writing a full, detailed and

itemized statement of his claims and accounts, whether claimed under this contract or otherwise, together with owner's acceptance of his work, including also all just credits to second party, and give in writing all information at his command that may be called for concerning the accounts and claims, and give second party a reasonable time to consider the same. In case of disagreement each party agrees to make honest and diligent effort to arrive at a correct and true settlement of each separate item, claim and account so presented, and all facts material to them, and to reduce in writing as considered all points, matters and facts agreed upon, and also a separate writing of all matters and facts, if any, left in dispute, which papers both parties agree to sign, and same shall be the basis of all future effort or action toward settlement of first party's claims, and it is agreed that matters and facts not presented in the itemized statement and signed writings above referred to shall be considered immaterial and waived by first party, and not brought to issue at a later date by first party.

The contract further provides that:

The full carrying out by first party of all obligations, acts, covenants and agreements by him to be kept or performed, including the provisions for settlement and arbitration, shall be a condition precedent to the rights of first party to commence or maintain any action in law or equity on account of this agreement, which is to be regarded as an entire contract. . . . No remedial or other provision of this agreement is made or shall be construed for the benefit of the surety on any bond given by first party to guarantee the carrying out of this contract, nor for the benefit of any other person not a party to this contract. The remedial provisions of this contract shall be considered accumulative to second party, and the election or use of one remedy or right shall not bar the benefits of other provisions. Should first party at any time be indebted for material, or labor furnished to or done by him, second party may, if he so elects, make payments, and first party agrees to make good such payments to second party. In case first party abandons the work provided

for in this contract, or fails to furnish bond as hereinafter provided for, all his rights under this contract shall by such act be canceled and waived, but such act shall not limit the rights or remedies of second party.  Should second party furnish or pay for labor or material that is included in this contract to be furnished or paid for by first party, the accounts and statements rendered by second party, showing cost of same, shall be conclusive evidence, except wherein first party shows that same are not correct. Each party agrees to pay any final judgment that may be rendered against him, but also agrees to commence no action or suit in law or equity on account of this contract, or any of the conditions or covenants herein contained, at a date later than six months after the last work shall be done or furnished under this contract, unless action within such time is hindered or prevented, by the other party. . . . Second party shall be under no obligations to furnish any notice or information to bondsmen of first party. Should any such notice or information be necessary or called for, or their interests in any way need attention, first party agrees to attend to and supply same.  Any interpretation put on plans and specifications by owners or architect, and not objected to by first party when first brought to his attention, shall be held to be his own interpretation also.  No agent or representative of second party shall be held to possess or to have exercised other authority than is granted to him in writing, under his instructions from second party, which instructions are subject to inspection by first party if called for.  No custom or usage shall be claimed by first party. . . . First party shall not claim for his benefit, or as an interpretation of plans, specifications, or this contract, any claims or charges which second party may make under their contract with owners. Work that first party proceeds with without objections as already provided for, shall be held to have been done under conditions satisfactory and acceptable to him.  The first party agrees to give a bond satisfactory to second party both as to form and sureties in the sum of $——— within ——— days, guaranteeing the full carrying out of this contract.

It was also agreed that first party should buy of sec-

ond party the necessary common brick for the building at $9 per thousand, f. o. b. cars on switch put in at the building site, and certain paving brick delivered at same place for $13 per thousand. These are the provisions of the contract which are involved in the litigation. Plaintiff claims that, by reason of various defaults and omissions of Glattfeld, it was compelled to pay, in order to secure the performance of the work he contracted to do, something like $3,000 in excess of the contract price, and for this it asked judgment against the surety company. It also claimed in a supplemental petition that it was compelled by the owners to have the brickwork washed down after the bringing of the suit, at an expense of $83.92, before the owner would accept the work. Defendant pleaded a counterclaim for extra work done by Glattfield; changes in the original contract; damages caused Glattfeld by reason of plaintiff's delay; and also credit for the return of certain materials; mistakes in pay rolls; any railway fare paid out. It also pleaded a full release of liability because plaintiff had not sued Glattfeld within the six months provided by the contract, and that it was also released because of certain changes in the plans and specifications, and in the original contract without a written order for such changes, as provided in the contract. The reply filed by plaintiff admitted certain credits claimed for Glattfeld, and otherwise denied the allegations of the answer and counterclaim. For a reversal a great many matters are relied upon, to some of which we shall now direct our attention.

I. In argument it is contended that defendant was released because it was at no time prior to the commencement of the suit notified of any default on the part of Glattfeld, the principal in the bond. As this issue was not tendered by answer or otherwise, it, of course, can not be raised for the first time in this court, and we do not therefore con-

1. SURETYSHIP: appeal: questions not raised below.

sider it.  *Van Buren Co. v. Am. Surety Co.,* 137 Iowa, 490; *Wilson v. Palo Alto Co.,* 65 Iowa, 19.

II.  Claim is made that defendant was released because of plaintiff's failure to sue Glattfeld within six months after the last work was done under the contract, as provided in one of the clauses quoted.  This action against the defendant was brought within the six months; but it is insisted that as plaintiff did not join Glattfeld, and permitted the six months to run without bringing suit against him before obtaining judgment against the surety, its action is barred.  The limitation is created by the contract, and is a contract as distinguished from a statutory limitation.  It relates wholly to the remedy as statutes of limitation do, and these contract provisions may be limited and controlled by the contract itself.  In the contract now under consideration it is provided that no remedial or other provision of the agreement was made or should be construed for the benefit of the surety on the bond given by Glattfeld to guarantee the carrying out of the contract, nor for the benefit of any other person not a party to the contract.  This is a sufficient answer to the claim made for appellant that the plaintiffs can not recover by reason of having delayed its action against the principal, Glattfeld.

*2. BUILDING CONTRACT: limitation of action: release of surety.*

III.  Defendant claims that it was released because of certain changes made in the contract, and it offered testimony to show the following, among other changes, to wit: That cement was omitted and lime used for mortar; that mortar color was entirely omitted; that arches not called for by the contract were put in over certain coal doors; that a partition wall was entirely omitted; that the height of the gables were increased something like sixteen inches, and various other matters, which it is claimed were not covered by the plans and specifications.  It also offered some testi-

*3. SAME: change in work: release of surety.*

mony of changes which the court would not allow to go
before the jury unless defendant would show that plain-
tiff and Glattfeld agreed thereto.  Plaintiff admitted many
of these changes, but contended that they were authorized
by the contract, and were in no manner a change of the
contract itself.  In other words, it insisted that all changes
were made in accord with the provisions of the contract,
and that the obligations between plaintiff and the principal,
Glattfeld, under the contract were in no manner changed.
The trial court submitted the question of change of con-
tract to the jury, but differentiated between changes of
contract and change in manner of doing the work under
the contract.  Turning to the contract, it will be observed
that it expressly provides that changes may be made, and
that such changes, if agreed upon, should in no. manner
relieve or release the sureties on any bond given to guaran-
tee the contract.  That such a provision is valid we have
no doubt.  See *Bartlett v. Stanchfield,* 148 Mass. 394 (19
N. E. 549, 2 L. R. A. 625); *Consaul v. Sheldon,* 35 Neb.
247 (52 N. W. 1104); *Northern Light Co. v. Kennedy,*
7 N. D. 146 (73 N. W. 524); *Abbott v. Gatch,* 13 Md.
314 (71 Am. Dec. 635).

But defendant strenuously insists that, while as be-
tween Glattfeld and Bartlett & Kling they might under
the contract make any changes they chose, they could not
make these changes orally without releasing the defendant
as surety.  In other words, its insistence is that any change
made in the contract, or in the manner of doing the work
not made by written order of Bartlett & Kling, released it
from liability.  This presents the most troublesome question
in the case.  As a general proposition we would agree with
defendant that a change in the manner of the doing of
work under a contract amounted to a change of the con-
tract.  But as the contract in question authorized the mak-
ing of any and all changes in the work called for by the
contract, plans, and specifications, the trial court commit-

ted no error in submitting to the jury the question of change in work as distinguished from change in contract, and left it to the jury to say whether or not there was any change in the contract itself.

Reverting now to the manner in which the changes should be made, and whether or not the surety is released in the event we find that there were changes made in the work without the written order of Bartlett & Kling, we are constrained to hold that the provision for the written order, while for the benefit and protection of both parties, did not in any way prevent oral direction for changes. Without the written order for a change Glattfeld could not recover any increased compensation because of extra work or material. Article 2 of the contract provides for changes in the work called for by contract, plans and specifications that may be directed or allowed by the owner or architect without in any manner making void or affecting the provisions of the contract, and that such changes, the order for the same, or the agreed value of the changes agreed upon should not in any manner relieve or release the sureties on any bond given to guarantee the contract. There is nothing contrary to law or public policy in this, and no reason for not respecting and enforcing the provision. The first party agreed to make no changes or alterations in the work except upon written order of Bartlett & Kling; and, as a condition precedent to a right of recovery for any work or material claimed as extra, he (Glattfeld) was required to produce such written order from Bartlett & Kling. Again it was provided that all work done or furnished by Glattfeld and chargeable to Bartlett & Kling on said building should be held to have been done under the contract. Alterations and changes in the contract were allowed *ad libitum,* provided they were directed or allowed by the owner or architect. But Glattfeld could not make them without a written order, nor could he recover anything

*(Margin note: 4. SAME: consent of sureties to changes in work.)*

as extras without producing this written order. It was for Glattfeld to get the written order if he desired authority to make the change on his own motion, and in no event could he recover any extra compensation without producing the order. The order was for his benefit, and while the parties themselves might make verbal changes which under the contract would be binding upon all, Glattfeld could not recover anything therefor without the production of the written order. Did a verbal change in the work, without a written order from Bartlett & Kling, release the defendant? That is the pivotal question in the case. If the contract had provided that no changes could be made except in writing or by written order, we should be inclined to hold that verbal change, although valid and enforceable between the parties, would, if carried out, release the sureties. See, as supporting this view, *Abbott v. Gatch,* 13 Md. 314 (71 Am. Dec. 635); *Village of Chester v. Leonard,* 68 Conn. 495 (37 Atl. 397); *Consaul v. Sheldon,* 35 Neb. 247 (52 N. W. 1104); *Bartlett v. Stanchfield,* 148 Mass. 394 (19 N. E. 549, 2 L. R. A. 625); *Northern Co. v. Kennedy,* 7 N. D. 146 (73 N. W. 524); *Hayden v. Cook,* 34 Neb. 670 (52 N. W. 165); *Ritchie v. State,* 39 Wash. 95 (81 Pac. 79); *Erickson v. Brandt,* 53 Minn. 10 (55 N. W. 62); *Risse v. Mill Co.,* 55 Kan. 518 (40 Pac. 904).

It is true, of course, that sureties on a bond to secure the performance of a building contract are discharged by any substantial change or alteration of the plan of work, unless the right to make such change or alteration is expressly given in the bond itself, or in the contract which it secures. *Morgan Co. v. McRae et al.,* 53 Kan. 358 (36 Pac. 717); *United States v. Freel,* 186 U. S. 309 (22 Sup. Ct. 875, 46 L. Ed. 1177), and cases cited. And in this connection it is entirely immaterial that the surety enters into his obligation for pay. *Lonergan v. San Antonio Co.* (Tex.), 104 S. W. 1061. But the surety may by his con-

tract consent, in advance, to any changes or alterations which may be made in the character of the work, or in the manner of doing it. *Hohn v. Shideler,* 164 Ind. 242 (72 N. E. 575); *Cowles v. Guaranty Co.,* 32 Wash. 120 (72 Pac. 1033, 98 Am. St. Rep. 838); *Pac. Co. v. Guaranty Co.,* 33 Wash. 47 (73 Pac. 772); *Grafton v. Hinkley,* 111 Wis. 46 (86 N. W. 859); *Smith v. Molleson,* 148 N. Y. 241 (42 N. E. 669). Most of these cases hold that, even if there be a provision for a written order, as in the case at bar, change in the manner of doing the work, or alteration of plans, without written order will not release the surety. This is especially true where the changes do not materially alter the contract price or the cost of the building. Many cases hold that, even with such provision as we find in this contract as to alteration or change of plans and manner of doing the work, the changes or alterations which may be made without releasing the sureties are those which do not materially affect the undertakings of the contractor; that if the work is substantially changed without the written order referred to, or even with such order, the surety is released. See *House v. Am. Surety Co.,* 21 Tex. Civ. App. 590 (54 S. W. 303); *Miller v. Ft. Smith Co.,* 66 Ark. 287 (50 S. W. 508); *Erfurth v. Stevenson,* 71 Ark. 199 (72 S. W. 50). In one of these cases it is said that the alterations which may be made without discharging the surety are such minor ones as owners often wish to make in the plan of the buildings which are under construction, and which do not greatly affect the undertakings of the contractor. See, also, *Consaul v. Sheldon, supra.* Some of the cases go to the extent of holding that the provision as to the written order is for the benefit of the surety, and that any change, whether of benefit or advantage to the principal in the bond made without a written order, will release the surety. Of these are, *Burnes v. Deposit Co.,* 96 Mo. App. 467 (70 S. W. 518); *Evans v. Graden,* 125 Mo. 72 (28 S. W. 439); *Lumber Co. v.*

*Gates,* 89 Mo. App. 201, and *Beers v. Wolf,* 116 Mo. 179 (22 S. W. 620). These cases seem to be in the minority, and after all the pivotal question is the construction of the contracts and agreements between the parties.

Going back now to the contract, we are constrained to hold that the defendant consented to all such changes as were made in the manner of doing the work, and that the provision for the written order was for the protection of the plaintiff, and that they might waive the same without releasing the surety company. See, as supporting this view, *Smith v. Molleson,* 148 N. Y. 241 (42 N. E. 569); *De Maltos v. Jordan,* 15 Wash. 378 (46 Pac. 402). Moreover, Glattfeld, the principal on the bond, agreed that he would make no changes without the written order, and the surety company, defendant herein, promised that Glattfeld would perform all the obligations of the contract on his part. Manifestly the surety can not rely upon a default of the principal which it promised he would not make. It is not too much to say that the changes, if any were made, were not such as entitled Glattfeld to additional compensation, and for that reason he did not insist upon the written order therefor. He might waive this requirement as to a written order, and we are inclined to the view that a written order was not required, save where the contractor was of the opinion that the changes and alterations were such as entitled him to additional compensation. Surely he could not claim anything for extras without this written order, unless he was able to show a distinct and independent contract therefor. This is the rule announced in the *Bartlett* case, *supra,* and we believe it to be sound.

Complaint is made of various instructions relating to these matters. These instructions are long, and we shall not set them out. It is sufficient to say that they were as favorable to defendant as it was entitled to, and no prejudice resulted therefrom.

IV.   By the contract it is provided that:   "Should second party [appellee] furnish or pay for any labor or material that is included in this contract to be furnished

**5. BUILDING CONTRACT: completion by owner: statement of cost: construction.**

or paid for by first party the accounts and statements rendered by second party showing cost of same shall be conclusive evidence, except wherein first party shows that same are not correct." It seems that plaintiff terminated the contract with Glattfeld by giving him notice as provided in the contract, and thereafter completed the building at their own expense. In this action they are seeking to recover these items of expense. The trial court, after eliminating certain of the items in plaintiff's account by its instruction No. 6, such as charges for telephone calls, rope, wheelbarrows, scaffolding and lumber, submitted the other items claimed by plaintiff to the jury, and also gave the following instruction:   "The contract between plaintiff and Glattfeld provides, among other things:   'Should second party [Bartlett & Kling] furnish or pay for labor or material that is included in this contract to be furnished or paid for by first party [Glattfeld], the accounts and statements rendered by second party, showing cost of same, shall be conclusive evidence, except wherein first party shows that same are not correct.'   So that the statement introduced in evidence, made by the plaintiffs to Glattfeld, should be taken by you as correct as to all items therein referred to and involved in this case, except wherein they are shown by the evidence not to be correct.   You will notice, however, as, to some of these items plaintiff has waived claim thereto."   This instruction is complained ·of upon the ground that, while such statements may have been admissible in an action against Glattfeld, they were not admissible against the surety for any purpose.   Further, it is contended that the provisions of the contract with reference to these statements had no reference to the situation as it developed here.   That is to say, it is argued that

it applied only to such things as plaintiffs were to furnish under the contract. We do not believe this interpretation should be placed upon the provision quoted. It undoubtedly was made to cover a case where plaintiff was for any reason compelled to complete the contract for Glattfeld.

The more difficult question is, Are such statements admissible in an action against the surety? That depends largely upon the nature of the contract. Here the defendant became responsible directly for the performance of the contract by Glattfeld, and it was provided that plaintiffs might terminate this contract, complete it, and charge up the cost to Glattfeld. Manifestly the provision as to statements and accounts rendered by plaintiffs had reference to such a situation and accounts rendered not to them, but by them to Glattfeld. No other reasonable interpretation can be placed upon this clause. This statement rendered to Glattfeld, which was introduced in evidence, made a *prima facie* case, and this is all that the court said in its instruction.

6. SAME: action against sureties: evidence: instruction.

While the record shows that objections were made to these statements when offered in evidence, there was no ruling of the court thereon, and consequently no error can be predicated upon the introduction of the statements. They were admissible on the theory that Glattfeld received and retained them without objection, and thus impliedly consented to their correctness. Moreover, they were copies of books introduced by plaintiff without objection. We are constrained to hold that there was no error here of which defendant may complain.

7. SAME.

V. In one of the instructions the trial court said, in effect, that the defendant insured and guaranteed the performance of the contract by Glattfeld. In this there was no error, for the statement was made as a prelude to the further remark that it was bound by the contract and all

its provisions. The statement, even if inaccurate, was without prejudice.

VI. During the pendency of the trial, and after the evidence was taken and both parties had rested, defendant's counsel asked that the case be reopened for the introduction of additional testimony. The taking of the testimony closed on Friday, and this request was made the following Monday. These witnesses, it is claimed, would have testified to certain changes in the plans for the building. They were on the ground at Ames, and knew of the exact situation. So far as shown, defendants made no effort to procure their testimony until after the evidence was closed, and when the request to reopen the case was made, these witnesses were not present. To have granted the request would have postponed the hearing for some time. And it is clear that the trial court did not abuse the discretion vested in it in refusing to open up the case. Moreover, the testimony, even if competent, would have been impeaching, rather than substantive, in character, and there was no error either in denying the request to reopen the case, or in overruling the motion for a new trial based upon newly discovered testimony. These matters are so largely discretionary that we do not interfere, save where a manifest abuse of discretion is shown. Many other matters are argued which are not deemed of sufficient importance to justify separate consideration. They are not of controlling importance, and this opinion has already outgrown proper limits. The original brief submitted for appellant did not comply with our rules, and while an amendment was filed, which we have treated as sufficient to cure the defects, the case by reason of these facts has been a difficult one to consider.

Having considered the controlling points in the case, and finding no prejudicial error, we reach the conclusion that the judgment should be, and it is, *affirmed.*

8. REOPENING CASE: new trial: discretion.