Consaul v. Sheldon.

———————— 5 2-??₵?

JACOB V. CONSAUL ET AL. V. FRANK L. SHELDON.

[FILED SEPTEMBER 21, 1892.]

1. **Proceeding in Error:** JOINT JUDGMENT: DEFECT OF PARTIES: WAIVER. While all the parties to a joint judgment that is sought to be reviewed by this court by a petition in error should be made parties herein, yet, where the cause is submitted to this court on its merits, and no objection is interposed, that there is a defect of parties until after such submission, it will be taken to constitute a waiver of the absence of proper parties.

2. **Pleadings:** ALLEGATIONS TAKEN AS TRUE UNLESS DENIED. Every material allegation of new matter in a pleading not denied by the answer or reply, for the purposes of the action is to be taken as true.

3. **Proof of Admitted Facts:** HARMLESS ERROR. The admission of testimony to prove a fact admitted by the pleadings is error without prejudice, for which a judgment will not be reversed.

4. **Introduction of Evidence:** ORDER DISCRETIONARY. The order in which a party shall introduce his testimony rests in the discretion of the presiding judge.

5. **Building Contract:** MEASURE OF DAMAGES FOR BREACH. Where a building is not erected within the time limited by the building contract through the default or neglect of the contractor, the owner is entitled to recover his damages thereby sustained. In such case it is not error for the owner to prove that the building had been leased for a stipulated sum and that the tenant was to take possession as soon as the work was completed, when it is shown that the reasonable rental value exceeded the amount of rent reserved by the lease.

6. **Credibility of Witness:** HOW TESTED. It is competent to show on cross-examination of a witness that he is hostile or

unfriendly towards one of the parties, and if he deny such fact, it is proper to contradict him by proving his declarations or statements made out of court. Such evidence, to be admissible, must tend to show that the witness entertains such hostility at the time of the trial.

7. ———: ———: DISCRETION OF TRIAL COURT. The extent to which a witness may be cross-examined for the purpose of showing his bias is within the discretion of the trial court, and unless there has been an abuse of discretion the judgment will not be reversed.

8. Excluded Testimony: ADMITTING CURES ERROR. Where offered testimony is excluded, the error, if any, is cured by the subsequent admission of the same evidence.

9. Building Contract: SURETIES ON BOND. A building contract contained a provision to the effect that the owner, during the progress of the work, might make changes or alterations in the plans of the building, and that the making thereof should not avoid the contract. In an action upon the contractor's bond it was *held* that the making of reasonable changes, which did not materially increase the costs of the building beyond the contract price, will not release the sureties.

10. ———: ———. A surety cannot urge the default of his principal as a ground for discharge from his obligation.

11. ———: CHANGE IN PLANS. When the plans and specifications for a building are changed after the contract is signed, without the knowledge or consent of either of the parties, the same will not vitiate the contract.

12. Instructions. *Held*, That there is no reversible error in the charge of the court, and that the instructions requested, which were not given, were properly refused.

ERROR to the district court for Lancaster county. Tried below before CHAPMAN, J.

*Charles O. Whedon,* for plaintiffs in error.

*Pound & Burr, contra.*

NORVAL, J.

Jacob V. Consaul, a contractor and builder, entered into two contracts with the defendant in error for the construc-

tion of two buildings. For the faithful performance of said contracts Consaul entered into two bonds, in the sum of $5,000 each, with Palmer Way, Charles C. Munson, and Zehrung & Henkle as sureties. The action is on these bonds. There was a verdict in the lower court in favor of Sheldon for $3,000, and a joint judgment was rendered thereon against all the defendants below for the amount found by the jury. The plaintiffs in error excepted, and brought the proceedings here for review upon numerous assignments of error.

The cause was submitted to this court on March 18, 1891, by written stipulation of the parties, upon printed briefs filed on the merits. Subsequently the defendant in error filed a motion to dismiss the petition in error for the want of proper parties. Before passing to the errors assigned, we will consider the question raised by the motion to dismiss.

It is insisted that Elmer E. Henkle was not made a party to the proceedings in error, and that he has not made any appearance in this court. While his name is given in the title of the cause in the petition in error as one of the plaintiffs in error, it fully appears from the body of the pleading that Munson, Way, Zehrung, and Consaul alone are seeking a reversal of the judgment. The affidavit of Mr. Henkle, filed in support of the motion, discloses that the proceedings in error were instituted and carried on without his knowledge or consent; that he never authorized any person to appear for him in this court, and never consented to be a party plaintiff or defendant, but that his name was inadvertently inserted in the petition in error. Mr. Henkle, being one of the defendants in the joint judgment sought to be reversed by these proceedings, should have been made a party, either as plaintiff or defendant. It has been held, and we think rightly, that when all parties to a joint judgment have not been made parties to the proceedings in error brought to reverse such judgment the

Consaul v. Sheldon.

defendant may have the same dismissed. ( *Wolf v. Murphy,* 21 Neb., 472; *Hendrickson v. Sullivan,* 28 Id., 790.) While good practice requires that all the parties to the judgment below should be before this court, it does not follow that the motion to dismiss the petition in error, made at this late day, should be sustained. The parties, having submitted the cause on its merits, waived the objection that there is a defect of parties. Such a defect is waived unless it is taken advantage of before the submission of the case upon the record of the court below. Had the objection been timely made, the ruling upon the motion might have been different, but not having interposed the same until so late a date in the proceedings the motion to dismiss is overruled.

The first error assigned in the brief of counsel for plaintiffs in error is based upon the ruling of the trial court in admitting certain testimony of the witness E. E. Henkle. The defendant Zehrung, in his answer, denied that he ever signed or authorized any person to sign for him the bonds in suit, and avers that he and Henkle, at the time said bonds were executed, were partners in the hardware business in the city of Lincoln, under the firm name of Zehrung & Henkle; and that Henkle had no right or authority to sign the firm name to said bonds, and that said Zehrung never at any time assented thereto. The plaintiff, for reply, denied each and every allegation in said answer contained. Henkle, in his amended answer, admits that he signed the firm name to the bonds, and alleges, in substance, among other things, that such signing was within the scope of the partnership, and that Zehrung was fully apprised of the fact, and ratified the same. Upon the trial Mr. Henkle testified, in effect, over the objection of Zehrung, that he signed the name of his firm to the bonds; that when the same was signed Mr. Zehrung was in Colfax, Iowa, and on his return to Lincoln a short time afterwards witness informed Zehrung of the fact of the signing and that the ob-

ject and purpose in so doing was to secure to the firm Consaul's patronage; that Zehrung thereupon acquiesced in what his partner had done, and the firm thereafter continued to furnish materials to Consaul under said arrangement and collected pay for the same. As the pleadings stood, the testimony of the witness Henkle, to which objection was made, was unnecessary. The allegations in Henkle's amended answer were not controverted by any other pleading filed in the case; therefore, for the purposes of the trial, it must be taken as true that Zehrung acquiesced in and ratified the signing of the firm name to the bonds. Although the introduction of testimony on that branch of the case was not necessary, its admission was not prejudicial error.

Objection is made because the court permitted defendant in error to introduce in evidence the record of mechanics' liens which had been filed against the property, before he had shown the amount due on the liens, or the amount he had paid to discharge the same. While it is true that it was indispensable that the plaintiff should prove the amounts due on these liens and the sum paid out by him to satisfy and discharge the same, it is unimportant whether such proof was introduced before or after the liens were put in evidence. After the liens were received in evidence, the amount due on each and the amount paid by the plaintiff below to satisfy the same, were amply proven. This was sufficient. The order in which a party shall introduce his testimony is discretionary with the trial court.

The objection that copies of the records of the liens, as well as the original liens, were permitted to be received in evidence is without merit. Plaintiffs in error were not in the least prejudiced thereby.

Defendant in error testified that about the time the contract was let he rented one of the buildings erected by Consaul, known as the Windsor Block, to one Criley for a term of years at $350 a month, and that the lessee was to

take possession the first of October, the time specified in
the building contract for the completion of the work, but
that he was unable to do so until the following March,
owing to the fact that the building was not finished until
that time.    This testimony was at the time objected to by
the defendants.    The purpose of its introduction was
to show that plaintiff had been damaged by reason of the
non-completion of the building according to the terms of
the contract.    Testimony of what the building had been
rented for was pertinent, as bearing upon the question
of damages, especially when followed by other testimony,
as was done in this case, showing that the reasonable rental
value of the building was more than Criley had agreed to
pay.    The fact that the lease was in writing did not make
oral testimony of the fact of the leasing, and the amount
of rent to be paid, incompetent.    Plaintiff having leased
the property for less than its fair rental value, he could
only claim as damages the amount he leased the same for
during the time the tenant was kept out of possession
through the fault of the contractor.

William Gray, the architect who drew the plans and
specifications for the buildings, was sworn as a witness on
behalf of the plaintiff below.    It is now claimed that the
court erred in refusing to allow him to answer certain
questions propounded to him on cross-examination.    After
having testified on such examination that he had felt un-
friendly towards the defendant Consaul at times, but had
no such feelings at the time of the trial, he was asked,
"Did you have a conversation with the defendant James
V. Consaul, Charles P. Larson, and one Hall in front of
the State National Bank of Lincoln, about the last of
June, 1887; I think his name was W. J. Hall?"    Wit-
ness answered, "I don't remember the man; I can't place
him, but so far as the other two men are concerned I might
have; I would not say that I did not."    He was after-
wards asked on cross-examination the following questions:

Q. Did you at that time and place, after Mr. Consaul had left the party and before he got out of sight, say to Larson in the presence of Hall, referring to Consaul, "There goes a man I'll do up, by God"?

Q. Did you say to Charles P. Larson in your office, in the city of Lincoln, state of Nebraska, in July, 1887, in speaking of the defendant Consaul, you would do Consaul up so bad he would never do any more work in Lincoln?

Q. Did you say to Charles P. Larson at your office in June, 1887, after the contract had been let to Consaul, that Consaul had taken advantage of Sheldon, and that you would get even with Consaul?

Q. Did you say to Charles P. Larson in front of the Appelget block, on Twelfth street in the city of Lincoln, between P and Q streets, in December, 1887, about the 15th, in reply to a question of Larson's as to how Consaul was getting along, that he paid no attention to you and that you would let him go ahead until he got through and then your turn would come?

To each of these interrogatories counsel for plaintiff objected, as incompetent, immaterial, and irrelevant. The objection was sustained and the testimony excluded.

Subsequently, the defendants called Mr. Larson as a witness, and after having testified that he had had a conversation with Mr. Gray in front of the State National Bank building in the presence of Hall in the latter part of June, 1887, after Mr. Consaul had left, the witness was asked if Gray did not at that time state to him, "There goes a man I will do up, by God." He was then asked to state what Mr. Gray said in that conversation in regard to Consaul. He was also asked if, in a conversation had with Gray in his office in Lincoln, in July, 1887, Gray did not say that he would do Consaul up so bad he would never do any more work in Lincoln. Witness was further interrogated, if in the same conversation Gray did not say that "Consaul had taken advantage of Sheldon, and that he [Gray]

would get even with Consaul for that." These questions were objected to, and the objections sustained.

It is now insisted that the questions put to the witness Gray on cross-examination and those propounded to Mr. Larson were proper, and that the court erred in not allowing them to be answered. It is no doubt true that, as a general rule, it is permissible to interrogate a witness in cross-examination as to whether he is hostile or unfriendly to the party to the suit not calling him, or whether he has not expressed feelings of hostility towards such party, and if he deny such fact, it is proper to contradict him by calling other witnesses and proving by them his declarations or statements made out of court. And this for the purpose of enabling the triers of fact to judge of the impartiality of the witnesses' testimony and the weight to be given it. It does not, however, follow from this, nor can we yield assent to the proposition, that the judgment should be reversed because answers were not taken to the questions objected to. While it is proper to prove the bias or prejudice of a witness by his evidence, given on his cross-examination, the extent of the examination is within the sound discretion of the trial court, and unless there has been an abuse of discretion the judgment will not be disturbed on account of its rulings. The rule is tersely stated in the note to section 450 of 1 Greenleaf on Evidence, thus: "The extent to which a witness may be cross-examined as to facts otherwise immaterial, for the purpose of testing his bias and credibility, is ordinarily within the discretion of the court, no rule of law being violated." We take it that it must appear from such examination that the hostility, bias, or prejudice of the witness towards a party to the suit existed at the time of the trial. (*Higham v. Gault*, 15 Hun [N. Y.], 383.)

In the case at bar the record discloses that prior to propounding the questions to the witness Gray, to which complaint is made, Mr. Gray admitted that he had felt

unfriendly toward the defendant Consaul at times, but disclaimed any such feeling at the time he gave his testimony. It also appears, by the questions put to both Gray and Larson, that it was sought to prove the ill-feeling of the former towards Consaul nearly three years prior to the trial. Had the questions propounded been answered and such answers been most favorable to the plaintiffs in error, they would have tended only to prove what Mr. Gray had already admitted, that he had at times felt unfriendly toward Consaul. We are unable to discover that plaintiffs in error were prejudiced by excluding the testimony of the witness Gray, or that the court abused its discretion in that regard.

As the questions propounded to Mr. Gray were excluded, there was nothing for the witness Larson to contradict, and the questions put to him were properly overruled. There is another reason why the excluding of the testimony of Mr. Larson is not sufficient ground for reversing the judgment, and that is, counsel for plaintiff in error made no statement of what he expected to prove by the witness. Under the repeated holdings of this court such a statement was necessary in order to obtain a review of the action of the trial court in sustaining an objection to a question propounded to a party's own witness. (*Kearney Co. v. Kent,* 5 Neb., 227; *Masters v. Marsh,* 19 Id., 458; *Mathews v. State,* Id., 330; *Connelly v. Edgerton,* 22 Id., 82; *Burns v. City of Fairmont,* 28 Id., 866.)

On page 559 of the bill of exceptions appears an offer made by the defendant to prove by the witness Palmer Way, who was then upon the stand, that the first details furnished by the architect for the bases of the bay windows were incorrect; that the bases could not be put on because of the defective details; that the architect by reason thereof was compelled to, and did, subsequently, after the lapse of considerable time, furnish other details, and that the delay of the contractor in completing his work was occasioned by

the failure of the architect to furnish proper details. This testimony was excluded and the ruling of the court is now assigned for error. A sufficient answer to the objection is, that the witness afterward, and before he left the stand, was permitted to, and did, testify fully upon that subject, so that the error in the ruling complained of was thereby cured.

A number of changes and alterations were made in the buildings, which increased the cost thereof, after the letting of the contracts and the signing of the bonds. But such changes and alterations did not have the effect to release and discharge the sureties, for the reason the contracts expressly provided that the owner might make alterations in the plans of the buildings and that the making of the same should not release the sureties. Each contract contained this stipulation: "Should the proprietor, at any time during the progress of the work, require any alterations of, deviations from, or additions in the said contract, specifications, or plans, he shall have the right and power to make such change or changes, and the same shall in no way injuriously affect or make void the contract." This provision was ample authority for all changes and alterations which were made in the buildings. We must not be understood as claiming that the owner had the right to make such changes as he saw proper, regardless of cost and the character and extent of such alterations. The changes and additions must be reasonable and not materially increase the cost of the buildings beyond the original contract price. The evidence shows that the alterations were not unreasonable, and that the additional labor and materials did not greatly exceed the value of the work called for by the original contract, which was omitted. Each of the contracts contained this clause: "No new work of any description done on the premises, or any work of any kind whatsoever, shall be considered as extra, unless a separate estimate in writing for the same, before

its commencement, shall have been submitted by the contractor to the superintendent and the proprietor, and their signatures obtained thereto, and the contractors shall receive payment for such work as soon as it is done. In case of days' work, statement of the same must be delivered to the proprietor, at the latest, during the week following that in which the work may have been done, and only such days' work and extra work will be paid for as such as agreed on and authorized in writing." Complaint is made because the above provision was disregarded. Obviously said stipulation was inserted in the contracts solely for the protection of the defendant in error and a compliance therewith he might waive. It was made the duty of the contractor to make and submit estimates of all new work to the superintendent and the owner, and the sureties cannot be heard to urge the failure of their principal to comply with the terms of the contract on his part to be performed, as a reason why they should be released from liability on the bonds. To do so would be to permit them to take advantage of the default of their principal, which would be contrary to legal rules.

From the testimony it appears that the word "glazed" was written on the plans of the Sheldon block, after the contract was let, without the knowledge or consent of Consaul or his sureties, thus indicating that glazed doors were to be used. The word was written on the plans by one F. C. Fisk, an employe in the office of the architect Gray, which he testified was done at the direction of Mr. Gray, for convenience, so that the specifications and plans might agree. The writing of the word "glazed" on the plans did not affect the validity of the contract, nor discharge the sureties from their obligation, for the very good reason that it nowhere appears in the testimony that Sheldon authorized or directed the writing of the word, or that it was inserted with his knowledge or consent. Again, the plaintiffs in error were not injured by thus changing the plans, for

20

the reason that the word "glazed" appeared in the specifications at the time the contract was entered into. The plans and specifications were parts of the contract of the parties and were to be construed together. The contract expressly provided "that the specifications and drawings are intended to co-operate, so that any works exhibited in the drawings, and not mentioned in the specifications, or *vice versa*, are to be executed the same as if mentioned in the specifications and set forth in the drawings, to the true intent and meaning of the said drawings and specifications." Under this stipulation, as the specifications called for "glazed" doors, the contractor was required to furnish such, although they were not called for by the plans. So that the writing of the word complained of on the plans was not such an alteration as rendered the contract void. The rights of the parties were not thereby in the least changed.

Objection is made to the giving by the court of an oral instruction to the jury during the progress of the trial. The bill of exceptions shows that immediately after the questions had been put to the witness Larson, to which we have already referred in this opinion, the court orally gave this direction to the jury: "The court instructs the jury to disregard this testimony entirely on this point." It is insisted that the court can no more instruct the jury orally during the introduction of testimony than it can charge the jury orally after the testimony is in. It is not necessary to determine whether or not the above direction of the court was in violation of the statute which requires all instructions to be reduced to writing, for it is plain that the oral instruction was not prejudicial. The court had refused to permit the witness Larson to answer all questions put to him regarding threats alleged to have been made by Mr. Gray, so there was no testimony before the jury on that subject to be considered.

Several instructions requested by the defendants the

court refused to give to the jury, and such refusals are assigned for error. Instructions numbered 6, 7, 8, 9, and 10, requested by the defendants and refused by the court, will be considered together. It is not deemed necessary to copy them into this opinion. They are all upon the same subject and are to the effect that if, after the contracts for the erection of the buildings had been made, the contracts were changed either as to the kinds of materials, or in the plans of construction, by the verbal agreements between Sheldon and Consaul, without the consent of the sureties, the sureties would be released from liability on the bonds sued on. It is true, as a general proposition, that a material change in the terms of a contract, to secure the performance of which a bond is given, releases the sureties thereon, when such alteration is made without the assent of the surety, even though the surety may sustain no loss by the change. But the rule has no application where, as in the case at bar, the contracts expressly authorize the owner of the buildings to make reasonable alterations therein during the progress of the work, and that the same should not invalidate the contract. In such case the surety is not released by reason of the making of such changes by the owner, notwithstanding the surety did not consent thereto.

The court did not err in refusing requests numbered 13 and 14. The first of which states, in substance, if the jury find that the plaintiff or his architect, Gray, caused to be written on the plans of the building known as the Sheldon block, at the openings indicating doors, the word "glazed" after the bond and contract for said building were executed and after the contractor had entered upon the erection of the building, and that the insertion of said word was without the consent of the sureties on such bond, then the jury should find for said sureties. One fault with this request is that it assumed that there was testimony before the jury upon which they could find that the plaintiff caused the word "glazed" to be written on such plans,

when the bill of exceptions contains no testimony from
which such an inference could be drawn. Another objec-
tion to the request is, it ignores the evidence which tended
to show that the original specifications for said building
called for glazed doors. If such evidence was true, then,
under the provision of the contract already mentioned, which
required the contractor to execute work called for by the
specifications, although not mentioned in the drawings, and
*vice versa,* the writing of the word "glazed" on the plans
was not a material change or alteration thereof. The
fourteenth request lays down the proposition that if the
architect, after the contract and bond were given, wrote, or
caused to be written, certain words in the specifications of
the Sheldon block without the consent of the signers of
said bond, the plaintiff cannot recover thereon. The in-
struction was properly refused. The insertion of the words
mentioned in the request could not have the effect to release
the sureties, unless the plaintiff authorized the writing of
the same, or consented thereto; to establish which there
is not a particle of evidence.

The defendants' eighteenth request to the court to in-
struct the jury, which was refused, reads as follows : "The
contracts set out in the pleadings in this case each provide
that in case of payments, which are to be made as the work
progresses, a certificate shall be obtained from the architect
to the effect that the work is done in strict accordance with
the drawings and specifications, and that he considers the
payment justly due. The jury is instructed that these cer-
tificates, unless impeached for fraud or mistake, are con-
clusive as to the character of the work done prior to the
making of such certificates, and the plaintiff cannot now
be heard to say that the work done before the making of
such certificates was not done in strict accordance with the
drawings." The plaintiff below on the trial and in his
pleading claimed damages by reason of the use by the con-
tractor in the construction of the buildings of poor and in-

ferior materials, defective workmanship, and the omission
to perform certain work and furnish materials called for
by the terms of the contracts.    The evidence discloses that
from time to time, during the progress of the work, nu-
merous payments were made by Sheldon to Consaul upon
certificates furnished by the architect to the contractor.
The theory of the defendants is that such payments having
been made upon the certificates of the architect, without
making any objection as to the manner in which the work
was being done, plaintiff is estopped, under the provisions
of the contracts, from now insisting that work was not
done in accordance with the plans and specifications, unless
he first impeach the certificates of the architect for fraud or
mistake.    Two cases decided by the supreme court of Illi-
nois are cited in support of the contention of plaintiffs in
error upon this point.    This court has also decided that
the certificate of the architect is conclusive as to the char-
acter of the work done prior to the making of such certifi-
cate.    But neither of the contracts in the cases passed upon by
this court, nor those before the Illinois court, contained all
the provisions which are to be found in the contracts we
are considering.    While each of these contracts provides for
the payment to the contractor, as the work progressed,
eighty per cent of the contract price, upon the certificate of
the architect to the effect that the work is done in strict
accordance with the drawings and specifications, and that
he considered the payments justly due, each also contained
the further stipulation, which is not found in either of the
contracts before the court in the cases alluded to, that "said
certificate, however, in no way lessening the total and final
responsibility of the contractor, neither shall it exempt the
contractor from liability to replace work, if it be after-
wards discovered to have been done ill or not, according
to the drawings and specifications, either in execution or
materials." The parties having by this clause agreed that
the certificate of the architect should not be conclusive, it

was not error for the court to refuse to charge the jury as requested by the eighteenth instruction. To have done so would have been prejudicial to the plaintiff.

The record shows that the buildings were not completed within the time mentioned in the contracts. The fault, in part, was with the contractor. There is also evidence tending to show that some delay was caused by the failure of the architect to furnish the details for the work. The defendants requested the court to charge the jury, by the sixteenth and twenty-third instructions, that if any delay in the completion of the buildings was occasioned by the failure of the architect to furnish the details, the sureties are not liable for any damages caused by the contractor not completing the work in time. While neither Consaul nor the sureties are liable for damages resulting from any delays caused by either the plaintiff or the architect, it is not true that the defendants are thereby relieved from liability for loss resulting to the plaintiff for delays attributed solely to the default or neglect of the contractor. For his own delays he and the sureties must respond in damages. This question was fairly submitted to the jury by an instruction given by the court on its own motion.

Exceptions were taken by the defendants to several paragraphs of the charge of the court. The objections urged against the instructions have, we think, been sufficiently answered in the foregoing discussion, and it can serve no useful purpose to now review the objections. It is sufficient to say that we find nothing in the charge to the jury that calls for a reversal of the case. The judgment is

AFFIRMED.

THE other judges concur.