HIGGINS ET AL. v. QUIGLEY ET AL.,

[No. 2,683.   Filed June 15, 1899.   Rehearing denied Nov. 23, 1899.]

CONTRACTS.—*Alteration.*—*Release of Surety.*—A change in a contract to remodel a house by substituting frame for brick in the construction of the second story, and shingling instead of weather-boarding on the frame portion, made without the knowledge or consent of the sureties on a bond executed to secure the performance of the contract, is not such a material alteration as will release the sureties, where the contract provided "that any necessary or desired changes may be made in the plans and specifications for said building during the progress of the work thereon without in any manner affecting the validity of the contract." *pp. 348-354.*

SAME.—*Alteration.*—*Parties.*—An answer to an action on a bond given to secure the performance of a building contract that a new and different contract was entered into without the knowledge or consent of the sureties, signed by but one of the plaintiffs, and thereby substituted different contracting parties, is insufficient, where the complaint averred that the contract was signed on behalf of both plaintiffs, since the capacity in which plaintiff signed the contract may be proved by parol. *p. 355.*

SAME.—*In Conflict with City Ordinance.*—*Alteration of Contract.*— *Validity.*—Where the manner of constructing a building as provided by the plans and specifications was prohibited by a city ordinance, such contract was not thereby rendered invalid, where the contract provided that any necessary or desired changes might be made in the plans and specifications during the progress of the work without affecting the validity of the contract, and the plans were changed so as not to conflict with the provisions of the ordinance. *pp. 358-362.*

From the Marion Superior Court.   *Affirmed.*

*W. A. Pickens, L. A. Cox* and *S. W. Kahn,* for appellants.

*Ferdinand Winter,* for appellees.

COMSTOCK, C. J.—On the 1st day of August, 1893, appellants Olive and Long entered into a building contract with appellee, giving a bond in the penal sum of $2,000, with appellants Higgins and McDaniel as sureties thereon.

The complaint charges that on the 14th day of September,

after the execution of the original contract and bond, a second agreement modifying the original contract was entered into between the principal contractors. It is alleged that this second agreement was signed on behalf of both appellees by appellee Mary Quigley.

The exhibit filed with the complaint shows the new contract signed by Mary Quigley alone, without any modifying description as to the capacity in which she affixed her name.

The separate demurrer of Higgins and McDaniel to the complaint was overruled, and a separate answer filed by them in three paragraphs, a general denial, and two paragraphs setting up affirmative defense. The second paragraph charges that the contract was void because it required the construction of a building in violation of an ordinance of the city of Indianapolis, which prescribed that a two-story brick building such as that contracted for should have walls twelve inches thick, whereas the contract provided for the erection, change, and repair of a building within the said city with brick walls only nine inches in thickness, and that the building was erected in violation of said ordinance. The third paragraph admitted the execution of the contract in its original form, and the execution of the bond in suit by Higgins and McDaniel as sureties only for Olive and Long for the performance of the contract as originally executed, and before it was changed by the second agreement, but alleged that the first contract and bond securing it were void because it provided for the violation of the ordinance mentioned, and in the manner specified in the second paragraph. This paragraph further alleges that after the original contract was executed, and the bond in suit signed, without the knowledge or consent of either Higgins or McDaniel, the contract was materially altered so as to provide for a wooden structure, and the original contract thereby abandoned, and that all the work performed and materials furnished by Olive and Long were performed and furnished under the new contract alone. A reply was filed to these two paragraphs, the first a general

denial; the second, that the changes made were necessary in the construction of the building, and were contemplated in the original agreement; that no work was done or agreed to be done in violation of an ordinance, and that the changes reduced the cost of the work $200.

The cause was tried by the court and a finding made and judgment rendered against all the appellants for $599.60, showing the suretyship of Higgins and McDaniel. A separate motion for a new trial was made by Higgins and McDaniel, and overruled. Upon this appeal the following errors are assigned. (1) That the complaint does not state facts sufficient; (2) that the court erred in overruling the demurrer of appellants; (3) that the court erred in overruling appellants' motion for a new trial.

The first objection urged to the complaint is that it shows, as appellants claim, that after the execution of the bond a different contract was entered into between Olive and Long and the appellee Mary Quigley, and that the original contract was abandoned. It is claimed that this transaction releases the sureties in two ways: (1) It is a material alteration, and the abandonment of the contract secured by the bond, and the substitution of a different contract in its stead, the change being from a brick structure to a frame structure; that the clause of the first contract which says "that any necessary or desired changes may be made in the plans and specifications for said building during the progress of the work thereon without in any manner affecting the validity of the contract," only contemplating such changes as may be within the general scope of the original plans and specifications and not any change that would amount to a departure from such plans. It must be admitted that a provision for making a desired or necessary change could not be construed to contemplate an entire departure from the original plans.

The parts of the complaint to which this objection applies aver that on the 14th day of September, 1893, it was further agreed in writing between said defendants Olive and Long

and the plaintiffs, such writing being signed on behalf of both plaintiffs by the plaintiff Mary Quigley alone, that the frame part should be shingled instead of weather-boarded and that on account thereof $20 extra should be added to the contract price, and that two windows should be placed in the rear closets, for which said contractors were to receive $9 extra. The averments preceding the reference to the agreement of September 14, 1893, show that the building inspector of the city of Indianapolis disapproved the plans and specifications for the improvement to which the first agreement referred, and required a frame structure to be substituted for brick in a portion of the work contracted to be done, and the shingling instead of weather-boarding provided for in the agreement of September 14th had reference to the change required to be made by the building inspector. The specifications, which are referred to, and made a part of the contract, and were upon motion of appellants made a part of the complaint, provide, under the head of "Brick Wall" that "the contractor should build the one-story brick part to the height of the other walls, * * * remove the front and rear brick gables to the plate line, and point up the old wall as directed."

The original contract shows that it was to remodel an old brick house, and the brick work referred to was only such as was required to build up the one-story brick part of an old house to the height of the other walls. We have referred to the fact that the change in question contemplated the substitution of shingling for weather-boarding upon a frame second story of a part only of the building, a part which was one story, and this change involved an addition to the contract price of $20, the original contract being for $2,000.

The plans and specifications show that the rear part of the old building was frame, and the contract required that this be removed and replaced by a new frame addition. The building remodeled according to the original plans and specifications was to have been partly of brick and partly

frame. As constructed in accordance with the change, it was partly brick and partly frame, the difference being that the second story of a part of the building was changed from brick to frame, shingled instead of weather-boarded. The style, shape, proportions, and general arrangement do not appear from the complaint to have been changed. Appellant insists that these changes substituted a frame for a brick structure and "subverted the whole general plan of the structure and introduced a new style of building which was never contemplated by the parties at the beginning." We cannot agree with this claim. The more reasonable proposition is that such changes were provided for in the provision heretofore set out. They were necessary and desired changes stipulated for in the contract. In support of this claim that the clause referred to applies to such changes as may be within the general scope of the original plans, and not any change which would amount to a departure from such plans, changes, such as might be for the greater comfort of the owner or greater beauty of the structure, and "in keeping with general style, extent, and purpose of the original undertaking," appellant cites: *Western Building Assn.* v. *Fitzmaurice*, 9 Cent. L. J. 169-173; *Grant* v. *Smith*, 46 N. Y. 93. In the case first cited, the contract provided only for the making of such changes as might be found *necessary*. The changes made were tearing down door frames after they had been placed according to the plans and specifications and substituting others of different form and greater cost, and by changing the finishing windows, which changes were not necessary to complete the house, but solely to gratify the taste of the owner. The court said: "The only other ground upon which it is assumed that the sureties were discharged is that relating to the changes in the work as it progressed. The mere fact that there were departures from the original plans and specifications could not operate such a discharge; because changes, under the direction of the architect, were

expressly provided for in the contract.   *   *   *   The
more rational construction is, that such alterations might
be made as should be found 'necessary' by the architect;
but whether necessary for the completion of the work, for
the greater comfort of the future occupants, or for the
gratifying of the personal tastes of the owner, was a matter
of no concern to any one but the architect himself.   The
spirit of the contract throughout indicates a purpose to leave
all such questions to the architect's discretion.   Of course,
it is not to be supposed that the architect would be per-
mitted to abuse that discretion by subverting the whole
general plan of the structures, and introducing a new style
of building which was never contemplated by the con-
tractors.   His change, if any, should still be in keeping with
the general style, extent, and purposes of the original under-
taking."   In the present case there was no change in the
style, extent, or purpose of the original undertaking.   In
*Grant* v. *Smith, supra,* the contract did not provide for
changes, and it was held that the change made released the
surety.   The contract provided for furnishing "a steam
engine of twelve inch bore and twenty inch stroke; two
cylinder boilers, each thirty feet long and twenty-five inches
in diameter, and all the shafts, pulleys, and iron necessary,"
etc.   An engine with three boilers, and of a greater capacity
and bore, and for an additional price, was substituted.

In *Howard County* v. *Baker,* 119 Mo. 397, 24 S. W. 200,
the question arose on a claim that there was a variance
between the contract pleaded and the proof, and the court
expressed the opinion that a change from stone lintels to
lintels of railroad iron was not a material change.   In *Mc-
Lennan* v. *Wellington,* 48 Kan. 756, 30 Pac. 183, the con-
tract provided for changes and alterations in the following
language: "Should the proprietors, at any time during the
progress of said work, require any alterations, or deviations
from, or additions to, or omissions in, the said contract,
specifications, or plans, they shall have the right and power

to make such change, or changes, and the same shall in no way injuriously affect or make void this contract, but the difference for work omitted shall be deducted from the amount of the contract by a fair and reasonable valuation; and for additional work required in alterations the amount shall be agreed upon before commencing additions." Changes were made and the sureties were held liable on their undertaking. In passing upon the question, the court said: "We also learn from the additional findings of the referee that the changes made were no more than are liable to occur in the construction of a building of the size and dimensions described in the plans. * * * Now, we think just such changes as were made were provided for in the contract." The provision for change in this contract is broader than the one under consideration.

In *Hayden* v. *Cook* (Neb.), 52 N. W. 165, the court held that the alterations made were within the terms of the contract without stating what the alterations were, and that the sureties were not released.

The same may be said of *Consul* v. *Sheldon*, 35 Neb. 247, 52 N. W. 1104, the court holding that the alterations were provided for in the contract. In the course of the opinion the court said: "We must not be understood as claiming that the owner has the right to make such changes as he saw proper, regardless of cost and the character and extent of such alterations. The changes and additions must be reasonable and not materially increase the cost of the buildings beyond the contract price. The evidence shows that the alterations were not unreasonable, and that the additional labor and materials did not greatly exceed the value of the work called for by the original contract, which was omitted."

In *Ashenbroedel Club* v. *Finlay*, 53 Mo. App. 256, the sureties were held to be bound because changes in the contract were such as were provided for, the changes consisting in sinking the foundation wall two or three feet deeper than shown in the original plans, owing to the insecure character of the ground encountered.

.Appellants contend, secondly, that the execution of the second contract released the sureties because it not only substituted a different contract for the original, but substituted different contracting parties, viz., Mary Quigley, instead of Mary and William F. Quigley. Appellants insist that if Mary Quigley signed for any one but herself, she should have so designated; not having done so, it is her individual contract; that if she signed for herself and William F. Quigley, she was acting as his agent, and, under such circumstances, if the contract binds the agent alone, it is her contract only, although it may appear that she was acting as agent for some one else, citing, *Board, etc.*, v. *Butterworth*, 17 Ind. 129, 131.

We think this position of appellants' counsel is not well taken. The complaint avers that the agreement in question "was signed on behalf of both plaintiffs by the plaintiff Mary Quigley alone. It will not be questioned that the capacity in which one signs a contract may be proved by parol; this is not permitted for the purpose of discharging the personal obligation that the signature itself imports, but for the purpose of charging some other person with personal obligation by reason of the fact that the person signing acted as agent or in some other representative capacity, and not solely in his right. The fact, however, that one so signing acted in a representative capacity would not relieve him from personal liability if his agency was unknown to the parties with whom he contracted.

In *Board* v. *Butterworth*, *supra*, which was a suit brought against the board of commissioners of Warrick county on a contract signed by Nathan Pryeatt, the court held that it was competent to give evidence of facts tending to show that the contract was in fact the contract of the county.

What we have said applies to the second assignment of error, viz., the overruling of the separate demurrers of Higgins and McDaniel.

Under the third specification of the assignment of errors,

the overruling of the motion for a new trial, the second reason is the first discussed. It is that the assessment of the amount of the recovery is too high. Appellants set out in their brief a tabulated statement of the items proved, with dates, showing a total of $2,476.65. Deducting the contract price, plus extras,—$2,000 plus $29 equals $2,029,—shows an overpayment of $447.65. At the time the building was completed appellees had paid $1,657.12. Until the contract price, $2,000, and the charge for extras, $29, were paid, appellees were not entitled to claim interest; or, in other words, said $447.65 overpayment could draw interest only from the time of payment. The statement justifies the claim of appellants' counsel that the assessment is too high by $63.41. From this statement, however, there is omitted an, item of $58, allowed by the court to appellees as rent, at the rate of $2 a day, from November 1, 1893, when the work was to have been completed, to the 29th day of November, 1893, when it was completed. Adding this amount to the overpayment, $447.65 plus $58, we have $505.65, on which interest should be computed from January 1, 1894, prior to which time the last payment had been made, to the date of judgment, April 30, 1897, three years and four months, amounting to $100.90, which would make the entire amount appellees were entitled to recover $606.55, while the judgment was for $599.55. It is claimed by appellees that there is an error in appellants' brief in this: that item numbered two, "paid painters $6," and item number forty-one, "paid Olive and Long $6;" that this amount was paid to Olive and Long, and by them paid to the painter Nealy. It was paid but once. A reference to the evidence sustains appellees' claim, and the discrepancy in the amount of the judgment and the amount it should have been, including the $58 allowed for rent, on the basis of payments stated in appellants' brief.

The third and fourth reasons for a new trial, that is, that the decision of the lower court was not sustained by the evidence and was contrary to law, are discussed by appellants

together, and will be so considered here. It is claimed that there is no evidence to support the decision of the court because the contract was illegal by reason of its providing for the erection of a building in violation of an ordinance of the city of Indianapolis. This objection does not arise upon the pleadings. It was presented by the second paragraph of the separate answer of the defendants Higgins and McDaniel, in which they averred that the contract, as originally entered into, provided for the construction of a building with a nine inch brick wall, and that the building was in fact so constructed, and that at the time the contract was entered into and the work done there was in force an ordinance of the city of Indianapolis which prohibited the erection of brick buildings with walls less than twelve inches thick. This answer was not demurred to. A reply was filed to the second paragraph of the answer, in which it was averred that the change in the plans and specifications, set out in the complaint, which was made in obedience to the requirements of the building inspector of the city of Indianapolis, was made necessary by the ordinance referred to in the second paragraph of the answer. Said change consisted in substituting frame construction for brick construction, where by the original plans and specifications it was provided that a nine-inch brick wall should be constructed; and it was denied in such paragraph of reply that the building had been constructed in any respect in violation of the city ordinance, but on the contrary the change averred in the complaint to have been made was made for the purpose of avoiding any such violation, and with that effect. Upon the trial, the undisputed evidence showed that the building which the contract required to be remodeled and improved was, as to its front part, thirty-three by thirty-two feet in size, a two-story brick, and, as to its middle part, immediately in rear of the front, thirty-two by sixteen feet in size, a one-story brick, and in rear of all of this, all frame. The original plans and specifications, as we have already shown, provided that the one-story brick

middle part was to be made two stories in height, the same as the front part, and all brick. The city ordinance prohibited the construction of brick walls less than twelve inches thick. The walls of the old building were only nine inches thick. The building inspector prohibited the raising of the one-story brick to two stories by building thereon a nine-inch wall, and thereupon the architect gave the contractors, under date of August 12, 1893, notice, in writing, set out in the complaint, to "build that part of the house shown as brick work on the plans, and condemned by the inspector, frame, and finish in every respect as specified on frame addition, with the addition of a molded belt at the second story line." This was the only change made. It changed the material that was originally intended to be used in doing a small part of the work from brick to frame. It did not change the style, dimensions, plan, or arrangement of the building at all. The sole question then is whether providing in the original plans and specifications for construction which was prohibited by a city ordinance invalidates the contract, although it is provided in the same contract that "it is further understood and agreed that any necessary or desired changes may be made in the plans and specifications for said building during the progress of the work thereon, without in any manner affecting the validity of this contract", and although it appears that when it was discovered that the construction as originally provided for was illegal, the plans and specifications were changed, under the authority thus given, so as entirely to remove such illegality, and that the building as in fact constructed did not in any way involve the doing of an illegal act.

There is no controversy between counsel upon the proposition that an agreement to do an illegal act is void, and that the illegality created by a city ordinance has the same force as if it were created by a statute of the State. Counsel for appellees contend that before a contract will be held invalid because of its illegality, it must *require* the doing of an

illegal act, and that if a contract is subject to two constructions, it will be given that construction which makes it conform to the law. Appellants, conceding the foregoing proposition, insist that the contract in suit in this case required the doing of an illegal act as written when the sureties signed the bond.

The contract in question, by reference to the plans and specifications, provides for the construction of a nine-inch brick wall, which was forbidden by a city ordinance, but its concluding paragraph is as follows: "And it is further understood and agreed that any necessary or desired changes may be made in the plans and specifications for said building during the progress of the work thereon without in any manner affecting the validity of this contract: Provided always that the difference as to cost occasioned by said changes shall be first agreed to in writing by both parties hereto." This language is very broad; it stipulates not only for desired changes, but for necessary changes. The right to alter the plans and specifications was not limited to modifications suggested by the taste and convenience of the parties, but included those that various conditions might render necessary. We cannot know what changes the parties had in mind which might become necessary, but the presumption is not a violent one that they might have had in contemplation variations on account of physical hindrances in obedience to the dominating police power which in all cities of considerable size regulates the material used in, the manner of construction, the lighting, plumbing, hanging of doors, etc. of a house. The parties to the contract are presumed to have had knowledge of the ordinance; they are presumed not to have entered into the contract as an idle thing, but with a view of carrying out its terms. No changes could be more necessary than such a one as would permit the performance of the contract. It is argued by appellants that if the first contract was illegal that everything that was done afterwards to make it legal was the mak-

ing of a new contract, and that for that reason also the sureties could not be held upon the bond. This would be true if the original contract did not itself provide for necessary changes. In this connection appellants cite and quote from the opinion in *Burger* v. *Roelsch*, 28 N. Y. Supp. 460. It was a case where the contract had been made to erect a building with walls of less thickness than was required by the building ordinance, and the permit was refused. The contractor then proposed to change to thicker walls. This was declined. He then proposed to change the structure to wood, and this proposal was adopted by the owner, but when the bids were taken upon the wood structure, the contract was let to another than the original contractor. Suit was brought for damages on the original contract, and a motion for nonsuit at the close of the evidence was denied. The supreme court held that as the contract was in violation of an ordinance, it was void, quoting from Wharton on Contracts to the effect that "a contract void for illegality is no contract," and held that the motion should have been sustained. It was claimed that the owner ought to have agreed to the change that was proposed by the contractor. The court said: "If so changed, it would have been a new contract involving new bids for the work. The defendants were not obliged to make a new contract with the plaintiffs." In that case, the contract made no provision for its modification. If the contract as entered into had been performed, its violation of the city ordinance would have followed. If the contract had been changed so as not to violate the ordinance, the change would necessarily have resulted in the making of a new contract. The change made in the contract in suit was made by virtue of the original contract, and the agreement for a change is made in the execution of the original contract. *Smith* v. *Molleson*, 148 N. Y. 241, 42 N. E. 669, involved a building contract, and the claim of the sureties to be released because of changes that had been made in the doing of the work from the manner pro-

vided in the contract. The case is in point upon two proposi-
tions. (1) While the obligations of sureties is *strictissimi
juris*, the rule of construction to be applied in the con-
struction of suretyships is the same that is to be applied in
the construction of contracts in general. (2) That the provi-
sions in a contract for changes bind the sureties the same as
principals, and that by virtue of such provisions the sureties
are to be held to have consented in advance to the making of
all such changes as are within the terms of the stipulations.
In the course of the opinion, the court said: "It should also
be observed that there is a clause in the contract the material
part of which reads as follows: 'Should the owner at any
time during the progress of his said work request any altera-
tions, deviations or omissions from the said contract, he shall
be at liberty to do so, and the same shall in no way affect or
make void the contract.' The defendant having by refer-
ence in effect made the contract a part of the bond, must be
deemed to have assented to this provision and to any changes
or deviations in the performance of the contract made under
it. She has, in effect, guaranteed the performance of the
written contract between other parties, which by its terms
permitted the parties to change it or deviate from it. While
it is not important to consider the real scope of this clause
since we preferred to dispose of the question in the case
upon the grounds that there is no material departure from
the contract when properly construed, it should be noted
that she consented in advance to changes of some character
which are permitted by the contract in language quite broad
and comprehensive." To the same effect are the cases of
*Howard County* v. *Baker*, 119 Mo. 397, 24 S. W. 200;
*McLennan* v. *Wellington*, 48 Kan. 756, 30 Pac. 183; *Ashen-
broedel Club* v. *Finlay*, 53 Mo. App. 256; *Hayden* v. *Cook*
(Neb.), 52 N. W. 165; *Consaul* v. *Sheldon*, 35 Neb. 247, 52
N. W. 1104; *American Surety Co.* v. *Lauber*, 22 Ind. App.
326; *Young* v. *Young*, 21 Ind. App. 509.

By the terms of the bond, the stipulation of the contract

becomes a part of it, and appellees Higgins and McDaniel become parties to the stipulation which provides for changes in the contract without a violation of the same. They agreed in advance to necessary changes. The contractor of the building under the supplemental agreement is fully within the terms of the original agreement. The only effect of the change was to eliminate the element of illegality and make it possible to carry it out without the violation of the city ordinance. We think the decision was supported by sufficient evidence and was not contrary to law.

The fifth, sixth, and seventh reasons for a new trial relate to the admission in evidence of the original complaint, the supplemental contract and the plans and specifications by appellees to be a part of the contract. Holding that the change in the contract was made in accordance with the changes provided for in the contract to which appellants were parties, we must hold that these reasons were not valid.

The ninth, tenth, eleventh, twelfth, thirteenth, fourteenth and fifteenth reasons for a new trial relate to the admission in evidence of the testimony of appellee Mary Quigley as to certain payments which she made to appellants Olive and Long. It is claimed that there was no proof that the payments offered to be proved were made under the contract; that the contract provided that only seventy-five per cent. was to be paid as the work progressed, and that it had not been shown that any estimate of the architect had been made so as to entitle appellees to make the payment. Mary Quigley testified that she made the payments under the directions of the architect; that she went to him every day and saw him about it and how much was paid and kept an account of it. Winterrowd, the architect, testified that he visited the house "almost every day or probably every other day," and whenever payments were made knew that they were not going beyond the contract price, and that they were made on his estimates. The contract did not require estimates to be made in writing. He also directed Mrs. Quigley to pay

off all bills approved by the contractors. The architect also testified that there had been paid, when the last payment was made, less than $700, about $650, and that at that time they had done work amounting to more than that amount; the amount paid was less than the seventy-five per cent. of the contract price, which would be $1,500, which appellees were authorized to pay in advance of the completion of the work.

The sixteenth reason for a new trial is found in the refusal of the court to permit appellants to ask appellee, Mary Quigley, on cross-examination whether or not the building as constructed was frame. It was properly excluded because it was not proper cross-examination. Her testimony in chief had been confined to her payments and the time when the building was completed. For a like reason, it was not error in cross-examination to refuse appellants to prove by Mary Quigley whether the labor and material she had paid for was not furnished upon a contract subsequent to the original contract. It was not error to refuse to permit like proof upon cross-examination as to painting that was done and to painting materials, constituting the sixteenth and eighteenth reasons for a new trial.

The twenty-first, twenty-second, and twenty-third reasons for a new trial relate to the admission of the testimony of the witness Winterrowd as to what proportion in lumber, labor, and material involved in the change from a brick to a wood structure the contract as executed bore to the contract as originally made for a brick structure. Questions intended to elicit this information were put to the witness in various forms, but we do not find that they were answered, except as follows: The witness was asked to state the cost of putting up the half story in brick. An objection to the question was overruled, and the witness answered that he could not tell the relative cost without making a calculation, but that the brick would cost more than the frame; that it would take brick masons longer to build the same wall than it

would take to build one of frame, and laborers on brick are higher priced than carpenters. The answer was so indefinite and so lacking in information that it could not have harmed appellant.

The twenty-sixth reason for a new trial is based upon the refusal of the court to allow the appellant McDaniel to testify that the change in the character of the building from a brick to a frame was made without his knowledge or consent. The court correctly sustained the objection upon the ground that it assumed that the building had been changed from a brick to a frame, a fact which was denied. The witness Winterrowd had, in answer to questions propounded by appellants' counsel, described the character of the building as constructed. The witness was then asked to "state whether or not this is a distinct style of construction." The court sustained the objection to the question, and counsel stated, we "offer to prove that a building the first story of which is composed of brick or stone with a second story of frame or wood and shingles is a distinct style of architecture, differing from a frame building or from a brick building." In adhering to the ruling, the court correctly said the "proposition was self evident, one being of wood and the other of brick." The foregoing are all the specifications of error discussed.

A careful consideration of the interesting questions so ably presented by counsel, and of the numerous authorities cited, lead us to the conclusion that the changes made were reasonable and authorized by the terms of the contract, and that the trial court committed no error for which the judgment should be reversed. Judgment affirmed.